## COMMONWEALTH vs. ANDRE COTE.

Hampden.    December 14, 1982. — January 28, 1983.

Present: ARMSTRONG, GREANEY, & SMITH, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, State action, Employee of municipal utility company. *Pleading, Criminal*, Complaint. *Practice, Criminal*, Complaint, Required finding. *Error*, Harmless. *Evidence*, Declaration against interest. *Unlawful Use of Gas. Larceny.*

Fourth Amendment restrictions on searches conducted by or at the behest of the government did not apply to the discovery of an illegal gas hookup without a meter, made by an employee of a municipal gas and electric department while he was in the basement of an apartment building for the purpose of reading electric meters. [232-235]

General Laws c. 218, § 35A, providing for written notice and opportunity to be heard before issuance of process, is limited to cases in which the underlying events give rise only to misdemeanor complaints. [235-236]

Neither the fact that the manager of a utility company who applied for complaints charging a defendant with larceny and unlawful use of gas lacked first-hand knowledge of the facts in question, nor the fact that the form requesting the complaints failed to recite that it was signed under oath made the resultant complaints invalid. [236-237]

Statements made by the manager of a gas company, alleging that in the basement of a certain apartment building there was an unmetered gas hookup attached to a boiler which supplied hot water to approximately twenty-five apartments in the building warranted a conclusion that there was probable cause to issue complaints charging the owner of the building with larceny and unlawful use of gas. [237-238]

At the trial of complaints charging larceny and unlawful use of gas, evidence that the defendant was the owner of an apartment building and that in the basement of the building there was an unmetered gas hookup attached to a boiler which supplied hot water to approximately twenty-five apartments warranted a finding that the defendant knew of the illegal gas connection and that he intended thereby to steal the company's gas. [238]

The judge at the trial of complaints charging larceny and unlawful use of gas did not abuse his discretion in permitting the Commonwealth to reopen its case after the defendant had moved for required findings of

not guilty where the Commonwealth's failure to introduce evidence of lack of consent stemmed from a good faith belief that the initial burden of production lay with the defendant. [238-242]

Although the judge in a criminal case should not have directed the defendant, over objection, to start his case before the Commonwealth had completed its evidence after reopening, the error caused the defense no prejudice and, in the circumstances, was harmless. [242-243]

A certain statement, which the defendant in a criminal case attempted to introduce in evidence under an exception to the hearsay rule for declarations against penal interest, was properly excluded on the judge's finding of insufficient corroboration. [243-244]

The offense of using unmetered gas without consent under G. L. c. 164, § 126, does not require that such use be either wilful or fraudulent. [244]

COMPLAINTS received and sworn to in the Holyoke Division of the District Court Department on July 1, 1981.

On appeal to the jury session of the Springfield Division, motions to dismiss and to suppress evidence were heard by *Barbalunga*, J. A second motion to dismiss was heard by *Dohoney*, J., and the cases were tried before him.

*Leonard E. Gibbons* for the defendant.

*William T. Walsh, Jr.*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant, Andre Cote, appeals from convictions by a jury of six in a District Court of use of unmetered gas without the written consent of the supplier, the city of Holyoke Gas and Electric Department (company), G. L. c. 164, § 126, and larceny, G. L. c. 266, § 30. He asserts that his motion to suppress evidence of observations made by company employees, who discovered an unauthorized unmetered gas hookup on his premises, was improperly denied; alleges defects in the complaint procedure which were the subject of motions to dismiss denied by the motion and trial judges; and maintains that there was error in both the procedural handling and disposition of a motion for required findings of not guilty made upon the close of the Commonwealth's evidence. He also contends that the trial court improperly excluded an exculpatory statement and incorrectly instructed the jury as to the proof of intent neces-

sary to support a conviction under G. L. c. 164, § 126. We affirm the convictions.

A hearing on the motion to suppress was held approximately two months prior to trial. Although the judge who heard the motion made no written findings (as he should have), our review of the transcript of the hearing discloses the following substantially undisputed facts. On June 3, 1981, Paul Pin, a meter reader for the company, was in the basement of Cote's Holyoke apartment block for the purpose of reading electric meters. Pin entered by use of a key which had been supplied for that purpose. While in the process of reading the building's approximately twenty-five electric meters with the aid of a flashlight, he heard a boiler start up near him in a sealed-off area behind a locked door. The door was constructed of slats with three to four-inch spaces between them. Playing his flashlight through the door, Pin observed the back of the boiler and some gas piping. He could see no gas meter. From the sound and smell of the burner, he concluded that gas was in use. He checked a book which he carried which indicated that there was no gas meter for the boiler on the premises. Pin then removed the door hinges with a pocket knife and entered the closed-off area. He confirmed that there was no meter. The boiler supplied hot water to the building's apartments. He noticed that the boiler had both an oil burner and a gas burner and that the oil line from an oil tank to the burner was turned off. He operated an aquastat on the boiler and observed the gas burner ignite. Pin then called a company foreman, Gordon Scott, who came to the scene immediately with another company employee, entered the area where Pin had been, took photographs and made observations. Scott called the Holyoke Police Department and two officers were sent to the building. One of the officers testified that they briefly surveyed the area and left during the time that Scott was present. Scott turned the gas off inside the building and it was later shut off in the street.

Complaints were issued upon the application of the company's manager. The testimony at trial of the observations

made at the scene repeated the testimony at the suppression hearing, with the exception that the police officer who testified at that hearing did not testify at the trial. There was also trial testimony that the illegal piping showed signs of having been in place for some time.

1. Cote asserts that evidence of the observations by company employees of the unauthorized gas hookup should have been suppressed because it was obtained in violation of his Fourth Amendment rights. We disagree.

The Fourth Amendment's protections are "triggered only when either the Federal or State government is significantly involved in the search, either participating in it or directing it in some way." *District Attorney for the Plymouth Dist.* v. *Coffey*, 386 Mass. 218, 221 (1982). See *Burdeau* v. *McDowell*, 256 U.S. 465, 475 (1921); *United States* v. *Winbush*, 428 F.2d 357, 359 (6th Cir.), cert. denied, 400 U.S. 918 (1970). Assuming, without deciding, that the search here was "unreasonable" under Fourth Amendment standards, it is clear that its fruits would not have been subject to suppression if the company was a privately owned utility. The mere fact of State regulation of a public utility does not imply State action whenever the utility acts, in the absence of some relationship between the State and the challenged action. See *Jackson* v. *Metropolitan Edison Co.*, 419 U.S. 345, 350-351 (1974); *District Attorney for the Plymouth Dist.* v. *Coffey, supra* at 222. The city's ownership of the company is not sufficient alone to make the company a State agency for Fourth Amendment purposes.[1]

Cote's reliance on *Camara* v. *Municipal Court*, 387 U.S. 523 (1967), and its progeny is misplaced. In *Camara*, the

---

[1] We find no nexus between the State and the search in the fact that two Holyoke police officers arrived at the site at the company's request. The record indicates that the officers arrived well after the illegal gas connection was discovered and neither instigated nor directed the search. They were merely called to observe what Pin had found. "No real purpose is served by precluding police examination of what has already been discovered." *Commonwealth* v. *Weiss*, 370 Mass. 416, 420 (1976), quoting *People* v. *Baker*, 12 Cal. App. 3d 826, 838 (1970). See *United States* v. *Bomengo*, 580 F.2d 173, 175-176 (5th Cir. 1978), cert. denied, 439 U.S. 1117 (1979). Neither officer testified at the trial.

United States Supreme Court held that the Fourth Amendment requires warrants for nonemergency administrative inspections.[2] The company's employees who conducted the search in the present case are not like the administrative inspectors involved in the "municipal fire, health, and housing inspection programs" with which *Camara* dealt. See *id.* at 530. Unlike the housing inspector in *Camara,* or the fire inspector in *Boston* v. *Ditson,* 4 Mass. App. Ct. 323 (1976), appeal dismissed and cert. denied, 429 U.S. 1057 (1977), the company's employees were not involved in the administration or enforcement of housing or fire codes, which usually carry criminal penalties. To the extent that the employees had authority to be on the premises, that authority arose under G. L. c. 164, § 116, which provides for access by company personnel "for the purpose of examining or removing the meters, pipes, wires, fittings and works for supplying or regulating the supply of gas or electricity and of ascertaining the quantity of gas or electricity consumed or supplied . . . ." This statute is not a tool of code administration and it makes no distinction between employees of publicly owned and privately owned utilities. Nor does it contain any provision requiring irregularities to be reported to the appropriate State authority. Rather, the statute is designed to facilitate the gathering of billing data and the inspection of the equipment used to supply gas and electricity to private premises. See generally *Reil* v. *Lowell Gas Co.,* 353 Mass. 120, 127-128 (1967). Since § 116 furthers only proprietary functions of utility companies without regard to their public or private ownership, it follows that company employees present on private property under color of the statute are not administrative inspectors, subject to the restrictions detailed in the *Camara* decision.[3]

---

[2] There is no claim that the company's officials acted to prevent an emergency.

[3] In light of our conclusion that, due to the lack of significant State action, the search does not implicate Fourth Amendment protections, it is not necessary to address issues going to the reasonableness of the search. We, therefore, express no opinion as to the effect of any technical non-

The remaining issue is whether the mere fact that company personnel are employed by a municipality is sufficient State action to require application of the Fourth Amendment exclusionary rule in this case. There is little uniformity among State and Federal courts as to the status of nonlaw enforcement public employees for purposes of the application of the Fourth Amendment. Virtually all the precedent in this area involves searches by public school teachers, the legal validity of which turn on factors unique to the school environment and the particular relationship among teachers, students, parents, and the State. See e.g., *Bellnier* v. *Lund,* 438 F. Supp. 47, 53 (N.D.N.Y. 1977); *In re Donaldson,* 269 Cal. App. 2d 509, 511 (1969); *State* v. *Baccino,* 282 A.2d 869, 871 (Del. Super. Ct. 1971); *Mercer* v. *State,* 450 S.W.2d 715, 717 (Tex. Civ. App. 1970). Perhaps the single general principle which may be distilled from the cases is the precept that mere employment by an arm of government is not enough to make an actor a government agent for purposes of the Fourth Amendment. Rather, the nature of the actor's employment, his specific duties and authority to act for the State and the circumstances of the search are all taken into account in deciding whether a search was "private" or governmental in nature.

Looking at all the circumstances in this case, we think the following considerations are significant. The company personnel involved were not even occasionally engaged in a law enforcement capacity or in the administration of a local code. To the extent that they had a legal right to be on the premises, it was under a statute which allows access only for enumerated proprietary purposes (even when resort is had to its warrant procedures when access has been "hindered"). They were employed by an arm of government which, in

---

compliance with the badge and written authorization requirements of G. L. c. 164, § 116, or whether Pin's removal of the door hinges and entry into the enclosed space housing the boiler was reasonable self-help within the authority conferred by § 116, in the absence of compliance with the provision contained therein which provides for obtaining a warrant if access is "hindered."

another context, has been held not to be engaged in purely "public" function. See *Whiting* v. *Mayor of Holyoke,* 272 Mass. 116, 120 (1930). That arm of government is a distinct department of the city of Holyoke, involved solely in the provision of services which are commonly supplied elsewhere by private utilities. There was no significant participation by law enforcement personnel, who neither initiated nor directed the search, and who were not called upon to testify at trial. Finally, the search originated in a departure from an employee's primary assigned duties as a meter reader. We conclude that these factors are insufficient to make the search one which implicates Fourth Amendment restrictions on searches conducted by or at the behest of the government. See generally *Commonwealth* v. *Richmond,* 379 Mass. 557, 561-562 (1980); *Commonwealth* v. *Storella,* 6 Mass. App. Ct. 310, 312-313 (1978). The motion to suppress was properly denied.

2. Cote asserts that his motions to dismiss both complaints, based in part on assertions of irregularities in the complaint procedure, should have been allowed. We find no error in those procedures.

Cote first argues that he was not afforded the written notice or opportunity to be heard before process issued to which he was entitled by G. L. c. 218, § 35A. Those rights are conferred by that statute, as appearing in St. 1945, c. 293, in cases of "a complaint for a misdemeanor," with certain exceptions not material here. "The implicit purpose of the § 35A hearings is to enable the court clerk to screen a variety of minor criminal or potentially criminal matters out of the criminal justice system through a combination of counseling, discussion, or threat of prosecution . . . ." Snyder, Crime and Community Mediation — The Boston Experience: A Preliminary Report on the Dorchester Urban Court Program, 1978 Wis. L. Rev. 737, 746 (quoted with approval in *Gordon* v. *Fay,* 382 Mass. 64, 69-70 [1980]). Similar procedures do not exist for felony complaints. See generally *Commonwealth* v. *Smallwood,* 379 Mass. 878, 884-885 (1980) (discussion of contrasting rights of defend-

ants under felony and misdemeanor complaint procedures). This case, at the complaint stage, was not one of an isolated "complaint for a misdemeanor." It involved two complaints, one charging a felony and one charging a misdemeanor, both arising out of the same facts. It is reasonably clear that the § 35A notice and hearing procedures would not have afforded Cote an opportunity to dispose of the case "out of the criminal justice system" — the primary raison d'être of the statute. We think that the introductory words of G. L. c. 218, § 35A, "[i]f a complaint for a misdemeanor is received," limit the statute's applicability to cases in which the events underlying the complaint give rise *only* to misdemeanor complaints.

Cote also argues that "the complaint was based entirely on hearsay evidence and on an unsworn statement of a person who had no actual knowledge of the case, and [who] signed the request for a complaint without discussing the matter with the person he refers to in his request for complaint." Both the "Request for Complaint" and the complaints themselves were signed by the company's manager, George E. Leary. That portion of the "Request for Complaint" form which provides for a clerk-magistrate to attest to the fact that the complainant has made the statements contained therein under oath was not completed. The complaints were signed under oath.

Leary's lack of first-hand knowledge of the facts alleged in the application does not undermine the validity of the complaints. "As a general rule there is no requirement that the subscriber to a complaint must have observed the incident complained of at first hand." *Commonwealth* v. *Daly*, 12 Mass. App. Ct. 338, 339 (1981), and cases cited. The record indicates that Leary learned of Pin's discovery of the illegal hookup through Scott, who had also been present at the scene. The fact that the "Request for Complaint" refers to Pin's activities but is based on information received from an unnamed person (Scott) is without significance, given the lack of any proscription against consideration of hearsay at this stage of criminal proceedings.

Neither does the failure of the "Request for Complaint" to recite that it was signed under oath compel invalidation. The complaint procedure is governed by G. L. c. 276, § 22, as appearing in St. 1979, c. 344, § 20. While that statute requires that the complainant be "examine[d] on oath," it does not require that the application itself contain evidence that the oath has been administered. It does not, in fact, require any particular form of memorialization of the required examination under oath. Similarly, Mass.R.Crim.P. 4(b), 378 Mass. 849 (1979), provides that a private party may subscribe to an application for issuance of process, but does not require that the application itself contain an attestation of the complainant's oath. The preferred procedure would be to administer the oath before the complainant makes statements which could serve as the basis for issuance of process, see Committee on Standards of the District Court of Massachusetts, The Complaint Procedure, commentary to § 3:05 (1975), and to memorialize the oath on the written application. We can see no compelling reason, however, to invalidate a complaint merely because it issued upon statements which were sworn to subsequent to their making. Here Leary executed a detailed "Request for Complaint" and, on the same day, "subscribed and swor[e] to" the resulting complaints which repeat the charges in brief, before an assistant clerk-magistrate. We note the lack of any independent statutory requirement that complaints be "sworn to" by complainants. In these circumstances, and in the absence of any contrary findings by the motion judge, we conclude from the attestation of oath contained on the complaints themselves that the examination under oath required by G. L. c. 276, § 22, was conducted.

Cote asserts that the complaints issued without probable cause. He bases this contention on the following facts: The complaints allege that the offenses occurred between June 12, 1972, and June 3, 1981; Cote did not obtain ownership of the property until sometime in 1980; and he was hospitalized on June 3, 1981, at the time the hookup was discovered. He contends that these facts indicate that he was charged

solely by reason of his ownership of the property, and that that fact in itself is not sufficient to charge a person with these crimes. Assuming that knowledge of the unlawful use is an element of the offense described in G. L. c. 164, § 126, we think knowledge can be permissibly inferred from the facts alleged in the "Request for Complaint." Those facts indicate that there was an illegal gas hookup attached to a boiler which supplied hot water to approximately twenty-five apartments in the building. A clerk-magistrate could reasonably conclude from these facts that the building's owner would be aware of the type and amount of fuel being used to supply his tenants with hot water and of the fact that the fuel was not being paid for or even billed. The conclusion that probable cause existed was justified.

3. When the Commonwealth rested its case at approximately 11:00 A.M. on the second day of trial, Cote moved, pursuant to Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), for required findings of not guilty on each complaint on the ground "that the evidence is insufficient as a matter of law to sustain a conviction." The jury was excused and a hearing on the motion commenced at 11:35 A.M. No oral argument was made in amplification of the ground stated in the motion as to the larceny complaint. With respect to the unlawful use of gas complaint, Cote contended that the Commonwealth had produced no evidence to establish lack of the company's written consent to his use of gas, an element of the offense charged under G. L. c. 164, § 126.[4] The judge

---

[4] This statute, as appearing in St. 1961, c. 284, provides in pertinent part that "[w]hoever wilfully or fraudulently injures, disconnects, removes or otherwise interferes with, or suffers to be injured, disconnected, removed or otherwise interfered with, any meter, pipes or fittings belonging to a gas company or to any person, or prevents a meter from duly registering the quantity of gas supplied through the same, or in any way hinders or interferes with its proper action or just registration, or fraudulently burns or wastes the gas of such company or of any person, or whoever attaches a pipe or any appliance to a main or pipe belonging to a gas company, or, without the written consent of such company, uses or causes to be used any gas supplied by such company, unless the same passes through a meter set by the company, or uses or causes to be used, any gas charged to any person without his written consent, shall be punished . . . ."

heard lengthy arguments of counsel directed to the question of who had the initial burden of production of evidence of consent. The prosecutor contended, in reliance upon G. L. c. 278, § 7,[5] that the defendant had the burden of production as a matter of justification. Cote asserted that lack of consent was an element of the crime charged. At the conclusion of argument, the judge ruled that the burden of production of evidence rested with the Commonwealth. He then determined that he would permit the Commonwealth to "reopen [its] case solely for the purpose of showing whether or not there was written consent," and that he would act on the motion after hearing that evidence. Cote objected. A short recess was called, apparently to allow the Commonwealth to produce a witness who could testify as to lack of consent. When court resumed at 12:10 P.M., the prosecutor indicated that the witness had been located and would arrive within the hour. Over the defendant's objections, the judge insisted that the first defense witness be called. Defense counsel made an opening, called a witness who testified that he delivered oil to the defendant's building, and introduced certain documentary evidence.[6] The Commonwealth's witness had, by then, arrived. He testified that no one had written consent to use the company's gas in a meterless hookup. The motion for required findings was then denied over the defendant's objection. The defendant was the only remaining witness. He testified that the boiler had always burned oil since he had owned the building and that he was unaware of any tampering with gas pipes in the cellar which would allow the boiler to run on gas. Cote never alleged, produced evidence to show, or argued that he had

---

[5] This statute provides: "A defendant in a criminal prosecution, relying for his justification upon a license, appointment, admission to practice as an attorney at law, or authority, shall prove the same; and, until so proved, the presumption shall be that he is not so authorized."

[6] The opening outlined evidence which the defendant asserted would show that he had no knowledge of tampering with the gas line. The exhibits consisted of a hospital record and a deed both admitted to support the defendant's claim of lack of knowledge. The testimony of the oil supplier was directed to the same contention.

the company's written consent to use unmetered gas. Cote now asserts that the judge should have allowed his motion as to both complaints because there was no evidence that he knew of the illegal piping arrangement. He further asserts that the judge's failure to act on the motion contravened the express requirements of rule 25(a), and that the judge's insistence that he present evidence before the Commonwealth's consent witness testified deprived him of a fair trial.

Little need be said about the sufficiency of the evidence of Cote's knowledge. The Commonwealth's evidence, viewed under the pertinent standards, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979); *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 239 (1982), and cases cited, was sufficient to warrant a finding by the jury that Cote knew of the illegal gas connection and that he intended thereby to steal the company's gas.

The procedural handling of the motion presents different problems. Rule of criminal procedure 25(a) clearly provides that "[i]f a defendant's motion for a required finding of not guilty is made at the close of the Commonwealth's evidence, it shall be ruled upon at that time." The rule is consistent with the principle that "in a criminal case, the defendant's rights [become] fixed at the time that the Commonwealth rest[s] and the defendant's motions for directed verdicts [are] denied, even though the defendant [chooses] thereafter to present further evidence." *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976). The literal language of the rule thus protects a defendant's right to insist that the Commonwealth present proof of every element of the crime with which he is charged before he decides whether to rest or to introduce proof in a contradiction or exoneration. The Federal counterpart to rule 25, Fed.R.Crim.P. 29 (1975),[7]

---

[7] This Federal rule reads, in pertinent part:

"(a) Motion Before Submission to Jury. Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or

"conforms in substance" to our rule. See Reporters' Notes to Mass.R.Crim.P. 25, Mass. Ann. Laws, Rules of Criminal Procedure at 434 (1979). Although Federal practice differs from ours as to a defendant's rights upon denial of the motion,[8] the somewhat less explicit language of the Federal rule has consistently been construed as imposing a prohibition identical to the one in rule 25 against reserving decision on the motion when filed at the conclusion of the government's case. See *United States* v. *House*, 551 F.2d 756, 758 (8th Cir.), cert. denied, 434 U.S. 850 (1977); *United States* v. *Conway*, 632 F.2d 641, 643 (5th Cir. 1980); *United States* v. *Turner*, 490 F. Supp. 583, 589 (E.D. Mich. 1979), aff'd without pub'd op., 633 F.2d 219 (6th Cir. 1980), cert. denied, 450 U.S. 912 (1981); 2 Wright, Federal Practice and Procedure § 462, at 640 (2d ed. 1982). This prohibition, however, does not abridge the trial judge's "discretion to permit reopening when mere inadvertence or some other compelling circumstance . . . justifies a reopening and no substantial prejudice will occur. If the court in the exercise of cautious discretion allows the prosecution to reopen its case before the defendant begins its defense, that reopening does not violate either the rules of criminal procedure or the defendant's right not to be put twice in jeopardy." *United States* v. *Hinderman*, 625 F.2d 994, 996 (10th Cir. 1980).

---

offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

"(b) Reservation of Decision on Motion. If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict."

[8] The predominant view in Federal practice under Fed.R.Crim.P. 29 is that a defendant who introduces evidence after the denial of a motion for "judgment of acquittal" (in Federal parlance) made at the close of the prosecution's case waives any error in the denial of the motion. See, e.g., *Jackson* v. *United States*, 250 F.2d 897, 901 (5th Cir. 1958). 2 Wright, Federal Practice and Procedure § 463, at 648 (2d ed. 1982). This waiver rule, however, has come under attack, "has been abandoned in at least one circuit and in other circuits the present position is uncertain." *Id.* at 646-647, and cases cited therein.

See *United States* v. *Sisack*, 527 F.2d 917, 919 (9th Cir. 1975); 2 Wright, Federal Practice and Procedure, *supra* at 641-642. In this case the Commonwealth's failure to provide evidence of lack of consent stemmed from a good faith belief that the initial burden of production lay with the defendant, an issue of some legal complexity, compare G. L. c. 278, § 7, *Commonwealth* v. *Jones*, 372 Mass. 403, 405-406 (1977), and *Commonwealth* v. *Jefferson*, 377 Mass. 716, 718-719 (1979), with *Commonwealth* v. *Munoz*, 384 Mass. 503, 506-508 (1981), which surfaced for the first time in connection with the motion after the Commonwealth had rested.[9] There was no indication that the defendant would be prejudiced, and (as will be discussed later) he in fact suffered no prejudice. We conclude that the judge could, consistent with the rationale of the *Hinderman* case, permit the Commonwealth to reopen to supply the missing evidence.

The remaining question is whether the judge should have directed Cote over objection to start his case before the Commonwealth had completed its evidence after reopening. Although there is some precedent for this procedure on the Federal side, see *United States* v. *Sisack, supra*,[10] we think, in view of the express language and considered purposes of rule 25, that Cote should not have been compelled to go forward. The error, however, does not require reversal. Cote did not rely upon any evidence of consent. Cote

---

[9] The fact that the parties might have sought to clarify the question at the pretrial conference, see Mass.R.Crim.P. 11, 378 Mass. 862 (1979), or by pretrial motion, or the fact that the Commonwealth could have sought a ruling after the company's credit manager testified, were considerations for the judge to weigh in making his decision whether the Commonwealth should be allowed to reopen.

[10] In *Sisack*, the trial judge "took the motion under submission and subsequently, over defense objection, granted the government's motion to reopen the case" to produce omitted evidence. 527 F.2d at 919. This evidence was admitted when "the defense was still presenting evidence." *Id.* at 920. The procedure was upheld as within the judge's discretion, the court noting the lack of prejudice to the defense where placement of the evidence within the defendant's case reduced the likelihood that its importance would be distorted. *Ibid.*

himself, the final defense witness and the person most likely to know of written consent, had it existed, did not claim he had consent when he testified after the Commonwealth had rested for the second and final time. Instead he testified that he had no knowledge of the illegal connection. We are not persuaded by Cote's argument that had the motion been granted when filed he would have been spared from introducing evidence or taking the stand against a record of prior convictions. In these circumstances, we conclude that the timing of the ruling on the motion caused the defense no prejudice and was harmless.[11] See *Commonwealth* v. *Hanger,* 377 Mass. 503, 510 (1979).

4. Cote attempted, under the statement against penal interest exception to the hearsay rule, to put in evidence an out of court statement supposedly made by his brother, Neil Cote, to two company employees to the effect that "[y]ou shouldn't blame my brother for this, I did it." The trial judge excluded the statement on grounds of insufficient corroboration. Cote asserts on appeal that the statement is corroborated because it was made to company employees, because one of those employees thought Neil Cote was the owner of the property and called him when the illegal hookup was discovered, and because the company had listed Neil Cote as owner at one time.

None of these circumstances corroborate the trustworthiness of the alleged exculpatory statement. At best, they indicate only that the statement was made and that Neil Cote was believed at some prior time to have owned the property. Massachusetts has adopted the Federal rule of evidence that "[a] statement tending to expose the declarant to criminal

---

[11] The judge here was motivated by the laudable purpose of conserving valuable court time. In a case of a rule 25(a) motion, however, the practice of pushing ahead over a defendant's objection and in the face of the rule's express language can, as this case demonstrates ultimately prove to be penny wise, but pound foolish. The integrity of rule 25 is best served, if a trial judge decides to allow the Commonwealth to reopen, by insisting (unless the defendant agrees otherwise) that the Commonwealth complete its case and by then ruling on the motion before ordering the defendant to proceed.

liability and offered to exculpate the accused is not admissible unless corroborating circumstances *clearly* indicate the trustworthiness of the statement." Fed.R.Evid. 804(b)(3) (1975) (emphasis supplied). See *Commonwealth* v. *Carr*, 373 Mass. 617, 622-623 (1977). The judge properly found that the asserted corroboration fell short of the rule's explicit requirement. See *ibid.*; *Commonwealth* v. *Keizer*, 377 Mass. 264, 270 & n.8 (1979).

5. Finally, Cote argues that it was error for the judge to refuse to instruct the jury that the Commonwealth was required to prove beyond a reasonable doubt that the offense charged under G. L. c. 164, § 126, was committed wilfully and fraudulently. He asserts that unless the statute is so construed, it would not adequately describe a crime.

The statute is written in the disjunctive and describes a number of discrete crimes. See note 4, *supra*. Our conclusion that the words "wilfully or fraudulently," which appear in the statute's first clause, are meant to modify only that clause is indicated by the fact that the word "fraudulently" is repeated in a separate disjunctive clause, and by the absence of both words from the statute's remaining clauses. The portion of the statute with which we are concerned is set off from the rest of the statute by the word "or" and prescribes a punishment for one who, "without the written consent of [a gas] company, uses or causes to be used, any gas supplied by such company, unless the same passes through a meter set by the company . . . ." Those words state no particular mens rea requirement in the sense argued by the defendant. To the extent that a finding of scienter may be required, we note that the judge instructed the jury in clear terms that actual knowledge of the unauthorized use of gas is an essential element of proof of the crime. See *Commonwealth* v. *Wallace*, 14 Mass. App. Ct. 358, 364 (1982). We are satisfied on the issue argued, that the statute does not impose a requirement that the use be either "wilful" or "fraudulent."

*Judgments affirmed.*