STATE of Utah, Plaintiff and Appellee,

v.

Brenda F. ELLINGSWORTH,
Defendant and Appellant.

No. 971456–CA.

Court of Appeals of Utah.

Oct. 16, 1998.

Robert K. Heineman and Vernice S. Ah Ching, Salt Lake Legal Defender Ass'n, Salt Lake City, for Appellant.

Jan Graham, Atty. Gen., Kris C. Leonard and David Gardner, Asst. Attys. Gen., Salt Lake City, for Appellee.

Dennis V. Lloyd, Teresa J. Mareck, and Paul G. Cassell, Salt Lake City, for Amicus Curiae Workers Compensation Fund.

Before BILLINGS, GREENWOOD and ORME, JJ.

## OPINION

BILLINGS, Judge:

Defendant Brenda Ellingsworth appeals her conviction for Workers' Compensation Fraud, a third degree felony in violation of Utah Code Ann. § 35–1–109 (1994). Specifically, defendant argues the trial court erred in denying her Motion to Suppress medical records. We affirm.

## FACTS

Defendant allegedly injured her back in October 1994 while working at Blynco Manufacturing Company. No other employee observed her alleged accident. After defendant's supervisor sent her to St. Mark's hospital for treatment, the supervisor reported the claim to the Workers' Compensation Fund (WCF) and included a letter explaining that she doubted the injury's validity.

A few days later, defendant was injured in a fight with her husband and sought treatment at the same hospital. Defendant later returned to St. Mark's seeking treatment for pain she associated with the Blynco accident. Defendant did not mention the intervening fight with her husband as a potential cause of the pain. She received treatment from a St. Mark's doctor throughout the next year, and the bills were sent to the WCF.

A WCF claims adjustor handled defendant's workers compensation claim. The adjustor's duties included ensuring that claims were compensable, assuring that appropriate medication and treatment were received, and determining when or if the claimants would return to work.[1] While investigating defendant's mounting bills, the WCF adjustor learned that Defendant: had been missing doctor's appointments, had failed to submit the required paperwork, had not returned to work, had received prescriptions for numerous strong narcotics and painkillers, and had been misrepresenting her medical history.

The WCF adjustor sent defendant to an independent medical examiner and met with defendant to clarify her medical history. Defendant's responses to the doctor's and the adjustor's questions led the adjustor to obtain defendant's consent to review her medical records. The WCF adjustor learned that defendant had a lengthy medical history ("several hundred medical records"), and forwarded her medical history to the independent doctor. The doctor, after reviewing the records and examining defendant, opined that defendant's pain was likely unrelated to the Blynco injury.

The WCF adjustor also sent defendant's medical records to WCF's investigation department. A WCF investigator met with defendant in February 1995, and defendant repeatedly denied having any prior or post-Blynco injuries. She also denied having been to the hospital in the past few years except for the Blynco injury. Once the WCF investigator suggested that he knew the ex-

---

1. *See* Utah Code Ann. §§ 31A–26–101 to 311 (1994) (Insurance Adjustors).

tent of defendant's past medical history, she admitted being assaulted by her husband and that she had been hospitalized in the past year. After further discussion with defendant, the WCF investigator forwarded her case history to the Utah Attorney General's office pursuant to Utah Code Ann. § 31A–31–104 (1994).[2] Defendant was subsequently prosecuted for Workers' Compensation Fraud. She filed a Motion to Suppress her medical records, which the trial court denied. Defendant was convicted and now appeals.

## ANALYSIS

### Did the Trial Court Err in Refusing To Suppress Defendant's Medical Records?

Defendant argues the trial court erred when it denied her Motion to Suppress all medical records and all evidence derived from those records. Defendant asserts that the use of her medical records in her criminal trial, gathered initially by the WCF to verify her WCF claims, violated her Fourth Amendment rights. She contends alternatively that the obtaining of her medical records was an unconstitutional seizure which exceeded the scope of her consent, or that her consent was not voluntary. As a necessary precursor to her Fourth Amendment claims, defendant must establish that the seizure of her records by the WCF was "state action" subject to the Fourth Amendment. This is an issue of first impression in Utah.

Defendant argues that the Workers' Compensation Fund is a state actor subject to the Fourth Amendment's strictures. She cites cases holding that a quasi-government corporation is a state actor for purposes of enforcing other federal constitutional restrictions. *See Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 394, 115 S.Ct. 961, 972–74, 130 L.Ed.2d 902 (1995).[3] Defendant focuses on the wrong issue. We accept for

purposes of our analysis, but do not concede, that the WCF is a state actor. However, this is not dispositive, as our analysis makes clear. The relevant authority under the Fourth Amendment focuses not on whether a state actor is involved, but on whether non-law enforcement government employees' acts are "state action" subject to the Fourth Amendment's strictures.

Recently, in *United States v. Attson*, 900 F.2d 1427, 1429–30 (9th Cir.) (emphasis added), *cert. denied*, 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 403 (1990), the Ninth Circuit dealt precisely with the issue of when a non-law enforcement government employee's acts are state action subject to the Fourth Amendment. In *Attson*, the defendant was the driver of an automobile involved in a fatal motor vehicle accident. *See id.*, 900 F.2d at 1429. The attending physician and staff were federal employees. *See id.* In the course of treatment, they noticed the scent of alcohol on Attson's breath, and took a blood sample to determine his blood-alcohol level. *See id.* The doctor testified at trial that he directed defendant's blood-alcohol level to be tested for medical reasons, and that the test results were released pursuant to a subpoena from law enforcement officials a year after the accident. *See id.* The defendant unsuccessfully sought to have the blood alcohol test results suppressed, and was eventually convicted of manslaughter.

The Ninth Circuit characterized the issue to be decided as "whether the strictures of the Fourth Amendment apply to the conduct of a government doctor who, for medical reasons, takes a blood sample from a criminal suspect and conducts a blood alcohol analysis on that sample." *Id.* at 1429. In discussing the type of state conduct necessary to implicate the Fourth Amendment, the court stated that

---

**2.** Section 31A–31–104(1)(b) states that "[u]pon written request by an authorized agency to an insurer, the insurer or an agent authorized by the insurer to act on the insurer's behalf shall release to the authorized agency information or evidence that is relevant to any suspected insurance fraud."

**3.** In *Lebron*, the Supreme Court determined that governmental control is the critical inquiry in considering whether an entity is a governmental actor for purposes of the Fourteenth Amendment. However, the question before us is whether the WCF has engaged in "state action" for purposes of the Fourth Amendment, and not whether the WCF is a "state actor." Thus *Lebron* is not helpful.

unlike the "state actor" requirement of the fourteenth amendment, the Fourth Amendment cannot be triggered simply because a person is acting on behalf of the government. Instead, the Fourth Amendment will only apply to governmental conduct that can reasonably be characterized as a "search" or a "seizure."

*Id.* In other words, "[t]he general *Attson* rule is that non-law enforcement government actors come within the purview of the Fourth Amendment only when their searches or seizures of individuals *have no other purpose* but to aid the government's investigatory or administrative functions." *Wallace v. Batavia Sch. Dist. 101,* 68 F.3d 1010, 1013 (7th Cir.1995) (emphasis added).

The *Attson* court stated:

Determining whether the conduct of a non-law enforcement governmental party is subject to the Fourth Amendment presents a question that is analytically quite similar to determining whether the conduct of a private party is subject to the Fourth Amendment. Both of these analyses proceed from the premise that at its core the Fourth Amendment was designed to apply to the conduct of law enforcement officials engaged in criminal investigations and that if the application of the Fourth Amendment is to expand beyond that core, the conduct to which it expands must approximate the types of activities to which the amendment is primarily directed; in other words, such conduct must be considered a "search" or "seizure." In addition, both analyses require us to gauge whether the party whose actions are challenged intended to assist the government in activities ("searches or seizures") covered by the Fourth Amendment, or whether his motivation was independent of such considerations.

. . . .

The intent test formulated in [*United States v. Walther,* 652 F.2d 788, 791–92 (9th Cir.1981)] and used to determine whether a private party is subject to the Fourth Amendment is equally applicable in the context of deciding whether non-law enforcement government employees are subject to the Fourth Amendment.... We thus conclude that for the conduct of a governmental party to be subject to the Fourth Amendment, the governmental party engaging in that conduct must have acted with the intent to assist the government in its investigatory or administrative purposes and not for an independent purpose.

900 F.2d at 1430, 1432–33.[4] The court concluded that because the doctor drew Attson's blood for purely medical reasons "he did not possess the requisite intent to engage in a search or seizure under the Fourth Amendment. Rather, he acted for a reason 'entirely independent of the government's intent to collect evidence for use in [Attson's] criminal prosecution.'" *Id.* at 1433 (alteration in original) (quoting *United States v. Howard,* 752 F.2d 220, 227 (6th Cir.), *cert. denied, Shelton v. United States,* 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985)).

In a similar state court decision, *Commonwealth v. Cote,* 15 Mass.App.Ct. 229, 444 N.E.2d 1282 (Mass.App.Ct.1983), the Massachusetts Appeals Court held that observations made by a municipally owned electric company employee were admissible in a criminal trial. The employee was reading electric meters in a private apartment when he discovered an unauthorized unmetered gas line. *See id.* at 1284. Eventually the police were called to the apartment and the apartment manager was cited. *See id.* at 1285. The employee was on the premises pursuant to a statute that provided access to utility personnel for meter reading. *See id.* at 1286. The *Cote* court examined whether the employee was engaged in state action

---

4. The *Attson* court noted that the United States Supreme Court in *New Jersey v. T.L.O.,* 469 U.S. 325, 334–35, 105 S.Ct. 733, 739, 83 L.Ed.2d 720 (1985) (emphasis added) (quotation omitted), stated that the strictures of the Fourth Amendment apply only if "'the government's *motivation* is to investigate violations of criminal laws or breaches of other statutory or regulatory standards.'" *See e.g., T.L.O.,* (school officials) 469 U.S. at 334–35, 105 S.Ct. 739; *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312–13, 98 S.Ct. 1816, 1822–26, 56 L.Ed.2d 305 (1978) (Occupational Safety and Health Act inspectors); *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730–33, 18 L.Ed.2d 930 (1967) (building inspectors).

solely because he was employed by a municipally owned utility.

> There is little uniformity among State and Federal courts as to the status of non-law enforcement public employees for purposes of the application of the Fourth Amendment.... Perhaps the single general principle which may be distilled from cases is the precept that mere employment by an arm of government is not enough to make an actor a government agent for purposes of the Fourth Amendment. Rather, the nature of the actor's employment, his specific duties and authority to act for the State and the circumstances of the search are all taken into account in deciding whether a search was "private" or governmental in nature.

*Id.* In evaluating the municipal employee, the *Cote* court specifically focused on the following: His lack of law enforcement capacity, that this "arm of government" had been held, in other contexts, "not to be engaged in a purely 'public' function," that there was no participation by law enforcement until. the employee contacted them, and finally, that the search arose directly from the employee carrying out his duties as a meter reader. *See id.* at 1286–87. Thus, the *Cote* court concluded that the search did not implicate the Fourth Amendment because it was not "conducted by or at the behest of the government." *Id.* at 1287.

The Michigan Court of Appeals reached a similar conclusion in *State v. McKendrick,* 188 Mich.App. 128, 468 N.W.2d 903, 910 (Mich.Ct.App.), *appeal denied,* 439 Mich. 859 (1991). In *McKendrick,* two city contractors were sent to cut defendant's lawn because the length had exceeded a local ordinance. *See id.* at 905. While performing this task, the men came upon a number of marijuana plants and reported their location to the police. *See id.* In denying defendant's Fourth Amendment claims, the court acknowledged that at the time of the discovery the men "were employees or agents of the city in their capacity as weed and grass cutters," but held that "the grass cutters did not enter defendant's property with the intention of conducting a search of the property or, in any way, to aid the city in its investigative

efforts." *Id.* at 911. Thus, the court concluded that the defendant had failed to show that his Fourth Amendment rights were violated.

Federal and state courts have applied the two-part test adopted in *United States v. Walther,* 652 F.2d 788, 791–92 (9th Cir.1981), for determining whether either private actors or non-law enforcement government actors have engaged in state action subject to the Fourth Amendment. "[T]wo of the critical factors in the [*Walther*] 'instrument or agent' analysis are: (1) the government's knowledge and acquiescence, and (2) the intent of the party performing the search." *Id.* at 792; *see State v. Watts,* 750 P.2d 1219, 1220–21 (Utah 1988) (adopting two-part *Walther* test to determine "if a private person or body has conducted a search as a government agent").

The private actor cases are analytically helpful in determining when a non-law enforcement state actor is engaged in "state action" for purposes of the Fourth Amendment. In *United States v. Howard,* 752 F.2d 220, 227 (6th Cir.), *cert. denied, Shelton v. United States,* 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 636 (1985), the Sixth Circuit utilized the two-part *Walther* test and concluded that an insurance investigator, "while cooperating with the police was not acting as an agent of the government," and was thus not subject to the Fourth Amendment's strictures. *Howard,* 752 F.2d at 227. In *Howard,* both the local police and the insurance investigator were examining a burned private residence for evidence of arson. *See id.* Though the private agent did not share his information with the police, at trial the government was able to introduce the private investigator's report. *See id.* The court stated that "where, as here, the intent of the private party conducting the search is entirely independent of the government's intent to collect evidence for use in a criminal prosecution, we hold that the private party is not an agent of the government." *Id.* at 227 (citations omitted).

Numerous other federal and state courts have arrived at a similar conclusion; that a private investigation, though benefitting a state or local government in its law enforcement capacity, was carried out with an *inde-*

*pendent intent* and thus was not a "search" or "seizure" that implicated the Fourth Amendment. For example, in *United States v. Pervaz*, 118 F.3d 1, 5–6 (1st Cir.1997), the First Circuit utilized a multi-factor test to conclude that two employees of Cellular One Boston (COB) were not government agents when they investigated a fraudulent scheme affecting COB customers. The COB employees had been informed about the fraud by Federal Secret Service agents, but then took independent actions to investigate and search for the source of the fraudulent cellular phones. *See id.* at 3–4.

We think that any specific "standard" or "test" is likely to be oversimplified or too general to be of help, and that all of the factors mentioned by the other circuits may be pertinent in different circumstances: the extent of the government's role in instigating or participating in the search, its intent and degree of control it exercises over the search and the private party, and the extent to which the private party aims to help the government or to serve its own interests.

*Id.* at 6. The *Pervaz* court concluded that the COB employees had a "legitimate independent motivation for [their] search," and thus held that there was no government action. *Id.*

In sum, the two-part *Walther* test that our supreme court adopted and refined in *Watts*, 750 P.2d at 1220–21, and that this court most recently discussed in *State v. Koury*, 824 P.2d 474 (Utah Ct.App.1991), sufficiently ferrets out whether an actor's "intent and purpose in conducting the search . . . is in the person's own interest or to further law enforcement," *Koury*, 824 P.2d at 477 (citing *Watts*, 750 P.2d at 1221–22), and equally applies to private individuals or non-law enforcement government agents.

In this case, the WCF agents investigating defendant's workers' compensation claims were doing so solely to determine defen-

dant's eligibility for workers compensation benefits. Thus, they had a purpose completely independent of law enforcement. The WCF agents then acted pursuant to State reporting statutes that required all insurers to report potential fraud. *See* Utah Code Ann. §§ 31A–31–103 to 105 (1994). Thus, when the agents turned over defendant's medical records to the attorney general, the WCF was acting like any other private insurer. This situation is analogous to the facts discussed in *Howard* and *Pervaz*, in which private investigations were held not to be "state action" because the parties' intent was primarily to benefit private interests and not law enforcement. Further, the attorney general's office did not seek defendant's medical records, nor did it advise the WCF agents on how to proceed in pursuing WCF's investigation of defendant. Finally, the WCF agents were not rewarded for reporting defendant's fraudulent action for criminal investigation. Thus we conclude that the WCF did not engage in "state action" that implicates the Fourth Amendment when it investigated defendant's claim for its own benefit and without law enforcement involvement. We therefore affirm the trial court's denial of defendant's Motion to Suppress.[5]

## CONCLUSION

We conclude defendant has failed to establish that the seizure of her records by a Workers' Compensation Fund investigator constituted "state action" sufficient to implicate the Fourth Amendment. We therefore affirm the trial court's denial of defendant's Motion to Suppress her medical records and affirm the conviction.

GREENWOOD and ORME, JJ., concur.

---

5. Defendant also raises the issue of prosecutorial misconduct for the first time on appeal. We conclude that though the prosecutor may have committed error, any error was not plain error as it was not harmful to defendant. We therefore do not deal with this claimed error in detail. "An appellate court has discretion as to the na-

ture and extent of the opinions it renders and we need not 'address in writing each and every argument, issue, or claims raised and properly before us on appeal.'" *State v. Tucker*, 800 P.2d 819, 824 n. 9 (Utah Ct.App.1990) (quoting *State v. Carter*, 776 P.2d 886, 888 (Utah 1989)) (additional citations omitted).