**STATE of Vermont v. Cindy L. SCHOFNER and Peter C. Tripp**

[800 A.2d 1072]

No. 99-541

May 2, 2002. The State appeals, pursuant to 13 V.S.A. § 7403, from an order of the Caledonia District Court suppressing evidence of marijuana cultivation and possession seized with a warrant. The court concluded that the information supporting the warrant, discovered by town listers during a site visit, was obtained in violation of the Fourth Amendment to the United States Constitution. We do not decide whether the listers were lawfully on defendants' land. We conclude that whether or not the listers

were on defendants' property lawfully, the evidence of defendants' possession of marijuana plants and drug paraphernalia is admissible in this criminal proceeding.[1] Accordingly, we reverse and remand.

In May 1999, two tax listers for the town of Walden were examining property for appraisal purposes. While conducting this appraisal, they noticed a new addition on the neighboring house, which belonged to defendants. The addition had not been part of defendants' property appraisal in the past. To determine the value of the addition, the listers entered defendants' property and proceeded to the house. They knocked on the front door, but found that no one was home.

---

[1] The dissent is inconsistent in its attack on this decision. In the opening sentence it states that we have ruled that there is "no constitutional impediment to town listers coming onto private property and inspecting the exterior of homes without advance notice or the consent of the property owners," and without concern for our constitutional privacy rights. In footnote three, it criticizes our decision because we have failed to resolve whether listers "have the right to inspect private property without providing advance notice to, or obtaining consent from, the property owners[.]" We doubt we have the power to commit both offenses at once. The latter charge is factually accurate; the former charge is not. This is a criminal case in which the issue is whether evidence will be admitted against defendants. Resolution of that question does not require us to decide whether listers have the legal right to enter a taxpayer's property without notice or consent. Neither the Town of Walden nor its listers are parties to this case. We prefer to resolve the issue bearing on the criminal responsibility of defendants and leave to another case to define the limits on how listers can appraise property.

They then walked around the perimeter of the house and measured the size of the addition. During her observation of the external dimensions of the house, one of the listers saw eighteen potted marijuana plants on a short, stone walkway about fifteen feet from a basement door. She reported her findings to the state police, who obtained a warrant to search defendants' house based on her observation of the marijuana plants. The search revealed twenty-three marijuana plants and other drug paraphernalia.

Defendants were charged by information with felony marijuana cultivation in violation of 18 V.S.A. § 4230(a)(3), and misdemeanor possession of marijuana in violation of 18 V.S.A. § 4230(a)(1). Pursuant to V.R.Cr.P. 41(f), defendants moved that the court suppress all evidence obtained pursuant to the search warrant. They argued that the warrantless entry onto their property by the listers was an unreasonable search by a government official and violated the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution. The court granted the motion, and the State appeals. On appeal, the State argues that: (1) the actions of the town lister do not trigger the protections of the Fourth Amendment; and (2) even if the Fourth Amendment is triggered, the lister's actions were reasonable. We consider the first issue raised by the State. Because of our resolution of the first issue, we do not reach the second issue.

The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment is, of course, applicable to the states through the Fourteenth Amendment. The basic purpose of the Fourth Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by

governmental officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967). It is undisputed that we are dealing here with the actions of a governmental official. Listers are town officers elected at town meeting for a term of three years. 17 V.S.A. §§ 2646(5), 2649. They are required annually to appraise all real property in the town and to "make such personal examination of the property which they are required to appraise as will enable them to appraise it at its fair market value." 32 V.S.A. § 4041. The lister acted pursuant to this responsibility in this case.

The parties agree, however, that not all observational activities of governmental officials are searches for purposes of the Fourth Amendment. See, e.g., *Commonwealth v. Cote*, 444 N.E.2d 1282 (Mass. App. Ct. 1983) (incidental search by city gas employee does not implicate Fourth Amendment); *United States v. Attson*, 900 F.2d 1427, 1433 (9th Cir. 1990) (refusing to suppress blood alcohol evidence where government doctor withdrew defendant's blood for medical reasons and not to assist in a criminal investigation). Here we are dealing with a governmental official who does not have law enforcement responsibility. Although the United States Supreme Court has not explored the reach of the Fourth Amendment in such circumstances, other courts have. The proper approach is defined by the Ninth Circuit Court of Appeals in *Attson*:

> Determining whether the conduct of a non-law enforcement governmental party is subject to the fourth amendment presents a question that is analytically quite similar to determining whether the conduct of a private party is subject to the fourth amendment. Both of these analyses proceed from the premise that at its core the fourth amendment was designed to apply to the conduct of law enforcement officials engaged in criminal investigations and that if the application of the fourth amendment is to expand beyond that core, the conduct to which it expands must approximate the types of activities to which the amendment is primarily directed; in other words, such conduct must be considered a "search" or "seizure." In addition, both analyses require us to gauge whether the party whose actions are challenged intended to assist the government in activities ("searches or seizures") covered by the fourth amendment, or whether his motivation was independent of such considerations.

900 F.2d at 1432.

The application of this analysis is laid out persuasively in *State v. Ellingsworth*, 966 P.2d 1220 (Utah Ct. App. 1998), a more factually relevant case. In *Ellingsworth*, a state workers' compensation fund claims adjuster gained access to defendant's medical records in connection with processing a workers' compensation claim. The records, and other information uncovered by the adjuster, led eventually to the prosecution of defendant for workers' compensation fraud, and defendant sought to suppress the records as the product of an illegal search. After evaluating *Attson*, and other decisions discussed below, the *Ellingsworth* court determined that the proper standard is "whether an actor's 'intent and purpose in conducting the search . . . is in the person's own interest or to further law enforcement,' . . . and [it] equally applies to private individuals or non-law enforcement government agents." *Id.* at 1225 (quoting *State v. Koury*, 824 P.2d 474, 477 (Utah Ct. App. 1991)).

Using this standard, the court reached the following conclusion:

> In this case, the WCF agents investigating defendant's workers' compensation claims were doing so solely to determine defendant's eligibility for workers compensation benefits. Thus, they had a purpose completely independent of law enforcement. . . . This situation is analogous to [that] . . . in which private investigations were held not to be "state action" because the parties' intent was primarily to benefit private interests and not law enforcement. Further, the attorney general's office did not seek defendant's medical records, nor did it advise the WCF agents on how to proceed in pursuing WCF's investigation of defendant. Finally, the WCF agents were not rewarded for reporting defendant's fraudulent action for criminal investigation. Thus we conclude that the WCF did not engage in "state action" that implicates the Fourth Amendment when it investigated defendant's claim for its own benefit and without law enforcement involvement.

*Id.* In reaching this conclusion, it relied upon two earlier decisions, *People v. McKendrick*, 468 N.W.2d 903, 911 (Mich. Ct. App. 1991), and *Cote*, 444 N.E.2d at 1287, which held that "searches" by government workers not involved in law enforcement do not violate the Fourth Amendment.

In *McKendrick*, a lawn service was hired by the city to cut defendant's lawn because it was overgrown in violation of a city ordinance. During the cutting, the workers found marijuana plants in buckets placed out in the lawn. Although the court found that the workers were employees or agents of the city when they uncovered the marijuana, it did not find a Fourth Amendment search primarily because the workers did not enter the property with the intent to conduct a search or to aid the city in its law enforcement investigation efforts. *McKendrick*, 468 N.W.2d at 910-11.

In *Cote*, a city electric meter reader discovered an illegal gas hookup while reading the meters in defendant's building. Emphasizing that "mere employment by an arm of government is not enough to make an actor a government agent for purposes of the Fourth Amendment," 444 N.E.2d at 1286, the court found that no Fourth Amendment search occurred because the meter reader was not involved with law enforcement personnel and worked for a separate branch of government with a proprietary function. *Id.*

We believe that the trial court went wrong in this case by characterizing the lister's conduct as an "investigatory or administrative search" as in *O'Connor v. Ortega*, 480 U.S. 709 (1987); *New Jersey v. T.L.O.*, 469 U.S. 325 (1985); *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978); and *Camara*, 387 U.S. 523. Although we agree that the applicability of the Fourth Amendment is not limited to criminal investigations, we cannot agree that it necessarily applies to any investigations, broadly defined. As the Court observed in *T.L.O.*, the investigation cases involve alleged breaches of statutory or regulatory standards. 469 U.S. at 335. Moreover, the violation in each is the failure to obtain advance approval for a search by way of a warrant, a requirement wholly inapplicable when the ground for entry is not connected with a violation of law.[2] See

---

[2] Defendants' position, here and in the trial court, was that the evidence must be suppressed unless the lister had consent to enter defendants' property or a search warrant. Thus, defendants' argument has been consistently that the lister's action

*Marshall*, 436 U.S. at 312-13. Thus, all the investigation cases deal with law enforcement, whether criminal, civil or administrative. In each of these cases, there was an investigation into a suspected violation of some law, regulation, policy or rule. There was a subjective motivation present in these cases that is lacking in the case before us: namely, to investigate some breach or wrongdoing.

As in *Ellingsworth*, this case involves a governmental employee who was involved in fact-finding to determine how to apply a particular law, here the property tax law. We have described the work of the listers in making an appraisal as "judicial in character." *Potter v. Town of Clarendon*, 118 Vt. 278, 280, 108 A.2d 394, 396 (1954). The lister had no law enforcement motive and no involvement with law enforcement officials. The lister received no benefit from reporting the presence of the marijuana and faced no adverse consequences from failing to do so. In the terminology of *Attson*, the activities of a lister do not follow or parallel the activities of a law enforcement officer. Following the decisions from other

———

was a search, unlawful because of a violation of the warrant requirement of the Fourth Amendment. The dissent has changed the issue, dropping any claim that the lister's action was a violation of the warrant requirement, and arguing instead that the deficiency lies in the absence of a statute requiring notice to the landowner and regulating the time and manner of inspection. This is an entirely new argument, never raised by the parties at any level and to which the State had no opportunity to respond. Since we hold that the lister's action was not a search, we do not reach its legality. Even if we agreed that the lister's action was a "search," we would not decide the legality of the search based on a new theory raised for the first time on appeal and solely by this Court, particularly where the issue is novel.

states, we hold that no Fourth Amendment search occurred when the lister encountered the marijuana. Accordingly, we reverse the decision holding the warrant defective and suppressing the marijuana and drug paraphernalia found in the execution of the warrant.

Having determined that there was no search conducted by the listers that is subject to the Fourth Amendment, we need not address whether the listers acted reasonably or lawfully in entering the property without defendants' express consent. Nor do we need to explore in any depth whether a different analysis or result might be commanded by Chapter I, Article 11 of the Vermont Constitution. The trial court relied solely on the Fourth Amendment in reaching its decision that the evidence from the search must be suppressed. Although defendants in their motions below, and brief here, also challenged the warrant on the basis that the listers' actions violated Chapter I, Article 11 of the Vermont Constitution, they failed to articulate any basis that would justify affording them greater protection under Article 11 than is required by the Fourth Amendment. Defendants bear the burden of demonstrating why the Vermont Constitution is more restrictive than the United States Constitution and have failed to meet it. *State v. Meyer*, 167 Vt. 608, 610, 708 A.2d 1343, 1344 (1998) (mem.).

*Reversed and remanded.*

**Johnson, J.,** dissenting. The majority reverses the trial court's order suppressing evidence in this case because it finds no constitutional impediment to town listers coming onto private property and inspecting the exterior of homes without advance notice or the consent of the property owners. According to the majority, the conduct of listers in inspecting private homes is not constrained by the Fourth Amendment and thus does not implicate constitutional privacy rights. Hence, the majority declines even

to consider "whether the listers acted reasonably or lawfully in entering the [homeowners'] property without [their] express consent."

I believe that this holding is inconsistent with controlling United States Supreme Court case law, and that it undermines the right of privacy established under both the Fourth Amendment and Article 11 of the Vermont Constitution.[1] In my view, our system of property tax appraisal does not, and cannot, require us

---

[1] As noted by the majority, defendants have failed to brief whether they are entitled to greater protection under Article 11. I do not, therefore, address whether Article 11 has a broader scope under the circumstances presented here. I note, however, that privacy concerns are at the heart of Article 11, see *State v. Morris*, 165 Vt. 111, 120, 680 A.2d 90, 96 (1996) ("the core value of privacy is the quintessence of Article 11"), and that we have often extended Article 11 privacy rights beyond that established under the United States Supreme Court's interpretation of the Fourth Amendment. See *id.* at 125, 680 A.2d at 100 (declining to follow under Article 11 Supreme Court's decision allowing warrantless search of trash placed in bags at curbside for collection); *State v. Savva*, 159 Vt. 75, 79, 87-88, 616 A.2d 774, 776, 781 (1991) (declining to follow under Article 11 Supreme Court's expanded automobile exception to warrant requirement); *State v. Oakes*, 157 Vt. 171, 183-84, 598 A.2d 119, 126 (1991) (declining to adopt federal good-faith exception to exclusionary rule); *State v. Kirchoff*, 156 Vt. 1, 7, 587 A.2d 988, 992 (1991) (rejecting Supreme Court's open-fields doctrine); *State v. Berard*, 154 Vt. 306, 310, 576 A.2d 118, 120 (1990) (rejecting federal analysis on searches of prison inmates); *State v. Wood*, 148 Vt. 479, 489, 536 A.2d 902, 908 (1987) (rejecting federal search-and-seizure standing analysis).

to relinquish our constitutional rights of privacy. We can, and must, preserve those rights and, at the same time, establish reasonable guidelines for the assessment of real property. Accordingly, I dissent.

Without question, the actions of the listers would have been unconstitutional had this Court found their actions to be subject to the protections of the Fourth Amendment. The listers were inspecting a neighboring property when they noticed what they believed to be a new addition built onto the home of Peter Tripp and Cindy Schofner. They decided to investigate. After finding nobody home, they went onto the property uninvited and without advance warning to measure the addition. One of the listers then proceeded to circumnavigate the home "to see if there had been any more additions." There is no dispute that, in doing so, the lister entered a private area of the home — the curtilage — that was excluded from public view and that was entitled to the same privacy protections as the home itself.[2] Thus, this is not a situation where the lister was in an area open to the public when she observed the incriminating evidence. Cf. *State v. Ryea*, 153 Vt. 451, 453-54, 571 A.2d 674, 675 (1990) (driveway or walkway within curtilage that serves as entryway to home is only semi-private area). According to the

---

[2] "The curtilage is an area outside the physical confines of a house into which the 'privacies of life' may extend, and which receives the same constitutional protection from unreasonable searches and seizures as the home itself." *State v. Rogers*, 161 Vt. 236, 241, 638 A.2d 569, 572 (1993) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984) (for purposes of Fourth Amendment, curtilage has been considered part of home itself because it is area to which intimate activities associated with sanctity of home extend)).

majority, however, none of this matters because town listers are simply not answerable to constitutional restraints.

This pronouncement is significant enough, but the scope of the majority's opinion appears to be even more far-reaching. Apparently, any government inspectors performing their duties have free reign to examine our homes unhindered by constitutional constraints, so long as they are not engaged in law enforcement activities arising from suspicion of specific criminal or regulatory violations. Under this analysis, the timing or manner of the intrusion is inconsequential and beyond redress because the reasonableness of the search is of no import.

Today's decision diminishes the privacy rights of all Vermonters, particularly those who have neither committed nor been suspected of having committed a crime. Indeed, only in rare instances will inspections lead to criminal proceedings. I am concerned mostly for the vast majority of Vermonters who are willing to be subjected to reasonable administrative inspections but "do desire protection from officious administrators who insist upon carrying out their duties without due regard for the resident's convenience, privacy, and dignity." See 4 W. LaFave, Search and Seizure § 10.1(g), at 397 (3d ed. 1996).

In the majority's view, Vermonters may not look to the United States Constitution for such protection. Nor is there any protection under existing statutory law. While the Legislature instructs listers to "make such personal examination of the property which they are required to appraise as will enable them to appraise it at its fair market value," 32 V.S.A. § 4041, there is no statute giving listers the right to enter onto private property,[3] let alone one that circum-

scribes the manner, timing, or scope of any such examination.

The way to solve this problem is not to ignore it or deny that it exists, as the majority has done, but rather to recognize the privacy interests at stake and recommend a solution that will protect those interests while allowing listers to fulfill their duty to examine private property. I would hold that the Fourth Amendment does apply to the activities of town listers in examining private property. I would further hold that the privacy rights protected by the Fourth Amendment are violated when listers are given unbridled discretion to inspect private property without consent or, alternatively, compliance with reasonable statutory standards concerning advance notice and the timing, manner and scope of the listers' activities.

## I. Government Action

As the United Supreme Court has recognized in "countless decisions," the fundamental and overriding purpose of the Fourth Amendment " 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' " *New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967)). The Fourth Amendment is a

---

[3] The fact that the majority has refused to suppress criminal evidence uncovered as the result of the listers' inspection of defendants' property does not resolve the issue most pressing to town listers — do they have the right to inspect private property without providing advance notice to, or obtaining consent from, the property owners? That is the question that listers posed to an attorney for the Division of Property Valuation and Review. Because of the posture in which this case is presented, that question is not before the Court. Nonetheless, at present, the authority of listers to enter private property without consent is not established by statute, and is, therefore, questionable.

constraint upon government only, however, and therefore does not apply to limit illegal searches by private individuals. See LaFave, *supra*, § 1.8, at 217. According to the majority, listers are not engaged in law enforcement activities, i.e., investigating regulatory violations or criminal wrongdoing, and thus are to be considered private persons immune from the constraints of the Fourth Amendment.

That analysis does not hold up. The Supreme Court has long emphasized that the Fourth Amendment's strictures impose restraints, not only upon police, but also upon governmental action in general. *T.L.O.*, 469 U.S. at 335. Thus, the Fourth Amendment is applicable to the activities of civil governmental authorities such as public school officials, *id.* at 333, building inspectors, *Camara*, 387 U.S. at 528, health and safety inspectors, *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312-13 (1978), and firefighters, *Michigan v. Tyler*, 436 U.S. 499, 506 (1978). The reasoning behind these decisions is simple: the fundamental interest to be protected — individual privacy — suffers irrespective of the source of the governmental intrusion. *T.L.O.*, 469 U.S. at 335. As the Supreme Court has stated time and time again, "it would be 'anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.'" *Id.* (quoting *Camara*, 387 U.S. at 530). The critical issue is not whether the government employee is acting in a law enforcement capacity investigating criminal wrongdoing, but rather whether the employee is on a government mission.

Thus, the Fourth Amendment extends to administrative inspections, most of which are made in the course of periodic or area inspection programs, and not in response to specific complaints. LaFave, *supra*, § 10.1, at 368. As noted, the United States Supreme Court has rejected the notion that the privacy rights established in the Fourth Amendment depend upon whether the search was part of a criminal investigation that might lead to prosecution. *Id.* at 371-72 (in *Camara*, Supreme Court overruled earlier decision suggesting that Fourth Amendment was limited to searches stemming from criminal investigations that might lead to prosecution). "It is a perversion of the exclusionary rule to conclude that the Fourth Amendment should protect most against the conviction of criminals." *Id.* at 377. The fundamental and overriding purpose of the Fourth Amendment is to protect individual privacy, and the individual's interest in privacy does not fluctuate with the intent of the intruding government officials. *Id.* at 377-78.

In the past, a number of courts concluded, as the majority does today, that the activities of governmental employees "carrying out of public functions which do not strictly speaking fall within the realm of law enforcement" are not covered by the Fourth Amendment. LaFave, *supra*, § 1.8(d), at 253-54. But after the Supreme Court's decision in *T.L.O.*, it is plain that "these cases are wrongly decided." *Id.* at 254. Although the "reasoning in *T.L.O.* leaves room for the argument, accepted in *United States v. Attson* [900 F.2d 1427 (9th Cir. 1990], that there are still some governmental employees whose activities do not constitute Fourth Amendment 'searches and seizures,'" *id.* at 255, neither *Attson* nor any of the other cases relied upon by the majority demonstrate that such a conclusion is warranted in this appeal.

· The cases relied upon by the majority stand principally for the proposition, not relevant here, that the Fourth Amendment does not constrain the activities of persons acting in an essentially private capacity merely because they happen to be government employees. In each of those cases, which are discussed below, the government employee was not on a

government mission, but rather was acting in essentially a private capacity.

In contrast, here it is undisputed that the town listers are government officials who were performing their governmental duties when they inspected defendants' home. Without question, their conduct had an "investigatory or administrative purpose designed to elicit a benefit for the government," *Attson*, 900 F.2d at 1430, that is, to aid the municipal government in assessing property taxes, one of the most basic and powerful functions of government.[4] Their aim was plainly to benefit the Town of Walden and to protect taxpayers collectively by assuring that defendants were being assessed based upon the full value of their home. Unlike the government employees in the cases discussed below, the listers were not acting merely as private persons who happened to be government employees. Rather, they were inspecting property in their capacity as government agents. Thus, under the controlling precedent, their activities are subject to the Fourth Amendment, as well they should be.

*Attson*, a Ninth Circuit Court of Appeals case upon which the majority relies heavily, does not support a contrary view. In that case, the defendant, who had been involved in an automobile accident, was taken to a hospital, where he consented to a blood sample for medical purposes only. Eventually, the hospital released the results of the sample pursuant to a grand jury subpoena, and the defendant was convicted of manslaughter. On appeal, the defendant unsuccessfully argued that the trial court erred by not suppressing the sample, which had been taken by a doctor employed by the federal government. The Ninth Circuit Court of Appeals noted that the Fourth Amendment regulated only conduct "designed to elicit a benefit for the government in an investigatory or, more broadly, an administrative capacity" and "cannot be triggered simply because a person is acting on behalf of the government." *Attson*, 900 F.2d at 1429.

Citing the trial court's finding that the doctor had taken a sample of the defendant's blood purely for medical reasons, the Ninth Circuit held that the doctor's "mere status as a governmental employee" was not enough to trigger application of the Fourth Amendment. *Id.* at 1433-34. Because the doctor was acting in the same capacity as any private physician and was not "motivated by some sort of investigatory or administrative purpose designed to elicit a benefit for the government," *id.* at 1430, the Fourth Amendment did not apply. Of course, as noted above, the opposite is true in our case. Rather than acting as private persons, the listers were performing their official duties to benefit the Town of Walden.

The other cases relied upon by the majority sound a similar theme. In *State v. Ellingsworth*, 966 P.2d 1220 (Utah Ct. App. 1998), a workers' compensation adjuster employed by a quasi-government corporation obtained and examined the defendant's medical records while reviewing her claim for benefits. Eventually, the defendant was prosecuted for insurance fraud after a workers' compensation investigator forwarded the defendant's case history to the attorney general's office pursuant to a statute requiring insurance agents to release information related to suspected fraud. The defendant argued that the use of her medical records in the criminal trial violated her Fourth Amendment rights. The ap-

---

[4] The information collected by the listers determines the amount of property tax levied, which if unpaid can lead to civil forfeiture or penalties. See generally 32 V.S.A. §§ 4601-5295 (assessment and collection of taxes). The role of the lister is as much a part of government's taxation power as the sheriff who might return to the property to collect delinquent taxes. See 32 V.S.A. § 5139.

pellate court rejected this argument, holding that the Fourth Amendment did not apply because the adjuster "was acting like any other private insurer" in reviewing the defendant's claim for benefits to protect its own interests unrelated to law enforcement. *Id.* at 1225.

Similarly, in *Commonwealth v. Cote*, 444 N.E.2d 1282 (Mass. App. Ct. 1983), a meter reader working for a municipally-owned, public-regulated utility was checking a gas meter in the basement of an apartment building when he noticed an illegal, unmetered gas hook-up, which he reported to police. At his larceny trial, the apartment owner argued that the evidence observed by the public utility employee should be suppressed. The court rejected this argument, ruling that neither "mere employment by an arm of government" nor the "mere fact of State regulation" implicates the Fourth Amendment. *Id.* at 1285-86. The court emphasized that the meter reader had a legal right to be on the premises pursuant to a statute that made "no distinction between employees of publicly owned and privately owned utilities," and that furthered only the "proprietary functions of utility companies without regard to their public or private ownership." *Id.* at 1286. Thus, as in *Attson* and *Ellingsworth*, the government employee was acting in essentially a private capacity and was not motivated by some sort of investigatory or administrative purpose designed to benefit the government.

The same can be said of the "government actor" in *People v. McKendrick*, 468 N.W.2d 903 (Mich. Ct. App. 1991). That case concerned a city ordinance that gave the city the right to enter upon any unfenced private property to cut down overgrown weeds, as long as advance warnings and notices were given. When the defendant failed to respond to the notices, grass cutters hired by the city entered the defendant's property to cut down overgrown weeds. Once there, the grass cutters discovered marijuana

plants and informed police. The court rejected the defendant's argument that the Fourth Amendment applied, concluding that there was no "state action" because the grass cutters were not on the property to aid the municipality for any investigative purposes. *Id.* at 911.

*State v. Smith*, 763 P.2d 632 (Kan. 1988), cited by LaFave, *supra*, § 1.8(d), at 258-59, is another case in which the Fourth Amendment was not applied to private conduct engaged in by a government employee. There, a state park employee was performing trash removal duties when he heard a hissing sound and entered a cabin to determine its source. He found a leaking hose and turned off the water, but in the process noticed several bags of marijuana. He notified police, and the lessees of the cabin were prosecuted. At trial, in response to defendants' motion to suppress, the court determined that the Fourth Amendment did not apply because the park employee's "actions were tantamount to those of a private citizen with no different status than that of an employee of an independent privately owned trash service." *Id.* at 637-38 (park employee was acting as "good neighbor" and not for any purpose connected with his employment).

After reviewing the relevant United States Supreme Court case law, the court in *Smith* found one "common thread" in those cases:

> In every case [in which the Supreme Court has held the Fourth Amendment to be applicable], the search has been conducted or sought by government "officials" or "agents" as a part of their regular duties of employment and were conducted within the scope of that employment. No case has been cited by counsel, and our research has found none, in which the sole basis for invoking the Fourth Amendment protections

was the mere fact that the person who discovered the incriminating evidence happened to be a government employee as opposed to a private citizen. In every case the search or proposed search has furthered the government's objectives as they relate to the duties of the government employee.

*Id.* at 637. Plainly, under this analysis, the listers' actions in the instant case are subject to the Fourth Amendment's constraints on government action.

In short, the cases relied upon by the majority do not support its analysis. The majority purports to be "[f]ollowing the decisions from other states," but cites no cases to support its specific holding that the listers' inspection was not a search under the Fourth Amendment. In fact, the only case directly on point — *State v. Vonhof*, 751 P.2d 1221 (Wash. Ct. App. 1988) — explicitly rejects the position taken by the majority. There, a tax appraiser working for the county entered the defendants' property, uninvited, to measure the dimensions of a new porch addition. Upon approaching an outbuilding, he smelled marijuana, left the premises, and contacted police. Like the majority in the instant case, the trial court concluded that the visit by the tax appraiser was not a search under the Fourth Amendment because the appraiser was not acting with law enforcement authority. The appellate court rejected this reasoning, ruling that the tax appraiser was acting as a government official, and not as a private citizen, and that it was not essential that he have law enforcement authority. *Id.* at 1224.[5]

The court concluded, however, that there was no unconstitutional search because a statute expressly authorized the tax appraiser to examine property "at any reasonable time,"[6] and, under the factors enumerated in a prior decision, the search was not unreasonable. *Id.* at 1224-25. Thus, *Vonhof* provides no support for the majority's view that the Fourth Amendment does not apply to listers inspecting private property.

## II. Reasonableness

I would hold that property tax inspections performed without advance notice or consent, and without being circumscribed in any manner by statutory law, are unreasonable.[7] The Supreme Court

---

[5] The Washington Supreme Court later recognized this ruling, citing *Vonhof* for the proposition that an inspection by a tax appraiser implicates constitutional privacy rights. See *In re Maxfield*, 945 P.2d 196, 198-99 (Wash. 1997).

[6] The existence of a statute circumscribing the conduct of tax inspectors distinguishes *Vonhof* from the instant case, but I do not mean to suggest that a statute with language as vague as the Washington statute would suffice to erase constitutional concerns.

[7] I fail to grasp the point of the majority's assertion that I have transformed the issue contested by the parties — whether there was an unlawful search because of the lack of a warrant — into a novel issue — whether lister inspections are reasonable absent a statute circumscribing them. The issue in this appeal is whether the trial court erred in granting defendants' motion to suppress. In reaching its ruling, the trial court considered first, whether the listers' conduct triggered the Fourth Amendment's protection against governmental intrusions, and second, after deciding that it did, whether the particular search in this instance was reasonable. Those are precisely the issues I examine in my dissent. I would hold that the Fourth Amendment was triggered, and that the search was not reasonable, given the lack of a statute circumscribing the listers' conduct. Because of the nature of the governmental conduct here, the warrant requirement is

has recognized that in determining the validity of a search, reasonableness is the "ultimate standard." *Camara*, 387 U.S. at 539. The reasonableness of a search is determined by "balancing the need to search against the invasion which the search entails." *Id.* at 536-37. The greater the need for the search, the more willing we are to tolerate intrusiveness; when there is virtually no need for the search, then no intrusion is warranted. This is the appropriate standard for administrative searches, including inspections by tax appraisers, which are not aimed at investigating suspicion of criminal activity. Cf. *State v. Martin*, 145 Vt. 562, 568, 496 A.2d 442, 446 (1985) (constitutionality of DUI roadblock depends upon reasonableness of seizure, as determined by weighing public interest in seizure against degree of intrusion into personal privacy).

In this case, then, we should balance the listers' need to conduct their inspections without advance notice, consent, or statutory constraints against the invasion of individual privacy resulting from such inspections. The right of Vermonters to be secure from governmental invasions of their homes is of vital interest, of course. As was the case here, listers often examine private areas within the curtilage of the home that are entitled to the same constitutional protections as the home itself. On the other hand, there is no evidence in the record suggesting that towns have a vital interest in being able to inspect real property on an emergency basis without obtaining consent, provid-

not really relevant. But the question of the reasonableness of the search remains. The majority does not consider this question because it holds that the Fourth Amendment is not even implicated. I disagree with this holding, however, and thus address the question of reasonableness. Toward that end, I consider the question of whether there is a statute circumscribing lister inspections.

ing advance notice, or abiding by a statute that circumscribes the manner and timing of the inspections.[8]

There is no question that town listers need to be able to inspect private property to fulfill the government's duty to assure that property is assessed fairly. Rather, the probative question is whether listers need to have, or should have, unfettered discretion to inspect private property at any time without advance notice, without the consent of the homeowner or occupant, and without being subject to any statutory or constitutional constraints. I say no. As was the case in *Camara*, the homeowner or occupant has "no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector . . . is acting under proper authorization." 387 U.S. at 532. The homeowner or occupant "may never learn any more about the reason for the inspection than that the law generally allows . . . inspectors to gain entry." *Id.* "The practical effect of this system is to leave the occupant subject to the discretion of the official in the field." *Id.*

### III. Solution

We do not have to strip Vermonters of their constitutional rights to have a workable, convenient real property assessment system. It is possible in the realm of administrative inspections to develop procedures for safeguarding individual rights without impeding impor-

[8] The only evidence in the record on this point is a memorandum from an attorney for the Division of Property Valuation and Review advising Vermont boards of listers in the wake of the district court's decision in this case. The memorandum recommends that listers obtain consent and, failing that, appraise property based upon curbside inspections, review of available aerial photography, inventory forms, or calls to builders, neighbors, and real estate agents.

tant government functions. Here are two possible solutions.

First, if town listers are to be given the authority to inspect homes *without* the owners' or occupants' consent, then there must be a statutory scheme that defines and regulates their right to entry by circumscribing the purpose, scope, manner, and timing of the inspections, and by providing reasonable advance notice. Cf. *Wyman v. James*, 400 U.S. 309, 326 (1971) (holding that, as structured, program requiring home visitation by caseworker as condition for welfare benefits did not violate Fourth Amendment, given numerous statutory safeguards, including advance notice); 24 V.S.A. § 5003(c)(7) (allowing municipalities to adopt ordinance providing that housing code enforcement officers "may enter, examine and survey all dwellings and dwelling premises at any reasonable time between the hours of 8:00 a.m. and 5:00 p.m. and that the inspection shall be made so as to cause the least amount of inconvenience to the owner or occupant, consistent with the efficient performance of the duties of the enforcing officer").

Such a statute would benefit listers by definitively establishing the scope of their right to enter onto and inspect real property. The principal purpose of the statute would be to protect the privacy rights of all Vermonters, not just the very few who might take the opportunity to avoid detection for criminal activities. Indeed, perhaps the most important privacy interest of the vast majority of people willing to subject their property to inspection is not having the inspector witness conditions wholly unconnected to criminal or regulatory violations but nonetheless embarrassing to them. See LaFave, *supra*, § 10.1(g), at 397.

Second, with or without statutory constraints, listers may also obtain consent for inspections. Notice of the intrusion would be appreciated, and, as a practical matter, few persons would refuse entry for such a purpose. See *Marshall*, 436 U.S. at 316; *Camara*, 387 U.S. at 539; LaFave, *supra*, § 10.1(c), at 381. Refusal to consent to an inspection would be particularly futile in the context of real property inspections because the homeowner could not effectively challenge an assessment in light of the refusal. See *Kruse v. Town of Westford*, 145 Vt. 368, 372-73, 488 A.2d 770, 773 (1985) (taxpayer must overcome presumption of validity of town assessment and retains burden of proving that property is overtaxed). As noted in the memorandum from the Division of Property Valuation and Review cited earlier, property owners will have to consent to inspection or else be content with their assessment.[9] In fact, if taxpayers appealing assessments to town boards of civil authority refuse to submit to an inspection of their property following notification, their appeal is deemed withdrawn. 32 V.S.A. § 4404(c) ("If, after notice, the appellant refuses to allow an inspection of the property as required under this subsection, including the interior and exterior of any structure

---

[9] In the rare instances when consent to inspection is refused and the town believes that an inspection is necessary, a statute addressing lister inspections could allow towns to obtain a search warrant. See *Camara*, 387 U.S. at 535-39 (administrative search warrants may be based on general facts completely distinct from type of facts required to obtain search warrants pursuant to criminal investigation); cf. 24 V.S.A. § 5003(c)(8) (allowing municipalities to adopt ordinance with provision for obtaining search warrant if entry for administrative inspection under housing code is refused; noting that probable cause for warrant need not be based on specific knowledge of particular dwelling, but rather may be based on passage of time between inspections, nature of dwelling, condition of area, or need to determine if there has been compliance with previous order).

on the property, the appeal shall be deemed withdrawn.").

Because I believe that giving unfettered discretion to government officials to inspect private property without any legal restraints on their conduct violates our basic constitutional right to be free from unreasonable governmental intrusions into our private lives, I would affirm the trial court's decision granting defendants' motion to suppress. The warrant used to search defendants' home was based solely on statements that the lister made to state police. In my view, those statements relayed knowledge gained in violation of defendants' constitutional rights, and thus must be expunged from the affidavits supporting the warrant. See *State v. Morris*, 165 Vt. at 126, 680 A.2d at 100. Without the lister's statements, the warrant would be unsupported, see *State v. Moran*, 141 Vt. 10, 16, 444 A.2d 879, 882 (1982), and any evidence seized from execution of the warrant would have to be suppressed. See *Mapp v. Ohio*, 367 U.S. 643, 656 (1961); *State v. Badger*, 141 Vt. 430, 452-53, 450 A.2d 336, 349 (1982).