STATE OF VERMONT

SUPERIOR COURT

Docket No. 81-7-16 Vtec

| ANR v. Donald Shattuck | DECISION ON MOTION |
|---|---|

This is an enforcement action by the Vermont Agency of Natural Resources ("ANR") against Donald Shattuck ("Respondent") for violations of Air Pollution Control Regulation § 5-201 and Solid Waste Management Rule § 6-302(a) related to an alleged illegal burn.  ANR served an administrative order ("AO") upon Respondent, which assessed a $2,500.00 penalty.  Respondent, representing himself, on July 29, 2016 filed a request for a hearing in this Court pursuant to 10 V.S.A. § 8012(a), along with a motion to dismiss the AO enforcement action.

In his notice of appeal Respondent asks the Court to dismiss the AO.  In the alternative, he requests a hearing before the Court.  ANR filed a reply opposing the motion to dismiss on August 3, 2016.  Attached to ANR's reply are sworn statements by Springfield Firefighters and deputy forest fire wardens Dan Baldwin and Aaron Sylvester, and Deputy Chief of the Springfield Fire Department Scott Richardson.  Respondent filed a rebuttal letter in response to ANR's reply on August 15, 2016.

### Background

In their sworn statements, Firefighters Baldwin and Sylvester state that a resident called to ask whether a permit had been issued for a fire on his neighbor's property that appeared to be unattended.  Finding no permit, the firefighters went to the scene to investigate.  Firefighter Sylvester reports that half a mile from the burn site they saw a large column of black smoke, and on arriving at the scene they saw flames 20–30 feet high, coming from a fire about 200 feet off the road, the base of which was concealed behind the crest of a hill.  From the size of the flames, Firefighter Baldwin thought a shed or similar structure was burning.  Based on their experience with fires, the firefighters believed the black color of the smoke indicated that something other than natural wood was burning.

Respondent met the firefighters on the road, admitted he had no permit, and asked them to issue one.  Baldwin states that he told Respondent he had to check the fire because of the black smoke.  He further states that Respondent was "upset and evasive," insisted he was only

burning leaves and brush, and that he told the firefighters they could not enter his property without a warrant. Firefighter Sylvester states that when Respondent asked them to issue a permit, he answered that they would not issue a permit until they could inspect the fire, because "it appeared that he was burning illegal items."

The firefighters then contacted the local police because, according to Sylvester, "it appeared that the fire was increasing in size and becoming wind-blown." A police officer arrived, but Respondent continued to deny access to the property. Although Respondent indicated the fire was in a large open field, the firefighters were not able to confirm this from the road. According to Sylvester, Baldwin "made his way around the property line in an attempt to size-up the fire and check for possible spread." Respondent followed him to make sure he did not enter the property. Sylvester states that he began recording a video which shows heavy black smoke coming from the fire, and notes that "the smoke is fast moving being produced by heavy and very hot fire."

The firefighters eventually contacted Deputy Chief Richardson, who said that they had authority as deputy forest fire wardens to investigate the fire. They communicated this to Respondent and the police officer, and all four men went up to the fire. They observed a fire approximately 20 feet in diameter and 4–5 feet high. In the fire they observed metal buckets, what appeared to be metal springs and other parts from furniture and mattresses, upholstery, and vinyl siding or gutter materials.

In his August 15, 2016 rebuttal filing, Respondent does not contest the firefighters' statements, except in claiming that his burn pile only consisted of trees, leaves, pine needles, lawn rakings, and hedge clippings. The parties' differing assertions regarding the content of the fire is not material to our consideration of Respondent's motion to suppress and dismiss.

### Discussion

Respondent's July 29th motion appears to ask the Court to dismiss the AO because it is based on information that the firefighters and police obtained by entering his property against his express wishes and without a warrant. This is akin to a motion to suppress or exclude evidence pursuant to the Fourth Amendment of the United States Constitution (and possibly Article 11 of the Vermont Constitution), and to dismiss for failure to state a claim pursuant to

V.R.C.P. 12(b)(6). We therefore analyze Respondent's dismissal request with an eye towards the constitutional and caselaw precedent concerning warrant-less searches in the criminal law context.

I.    Whether the Court must hold an evidentiary hearing

Respondent's July 29 motion only asks for a hearing if his request for dismissal is denied. We understand this to meant that he does not request a hearing on the motion to suppress and dismiss.

An evidentiary hearing on a motion to suppress is unnecessary unless "the motion papers 'indicate a real dispute for one or more relevant facts'" or if "substantial factual issues exist." State v. Tongue, 170 Vt. 409, 413 (2000) (quoting State v. Senecal, 145 Vt. 554, 560 (1985)). The Court also need not make factual findings unless there is a factual dispute. Id. (citing Senecal, 145 Vt. at 561). While Tongue and Senecal refer to the rules of criminal procedure, the civil procedure rules follow the same principles. V.R.C.P. 78(b)(2) (allowing courts to rule on motions without oral argument, and without evidentiary hearing if none is requested, or if the court finds "no genuine issue as to any material fact").

II.   Burden of proof

In a motion to suppress based on an illegal search, the moving party bears the burden of proving that a search took place. State v. Harris, 2009 VT 73, ¶ 6, 186 Vt. 225. If this burden is met, the State then carries the burden of proving that the search was justified. Id. The standard of proof the State must meet is a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 177 (1974) (applying preponderance of the evidence standard to suppression motions); State v. Caron, 155 Vt. 492, 502 (1990) (same).

III.  Whether the exclusionary rule applies

The Fourth Amendment of the U.S. Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST., amend. IV. Likewise, Article 11 of the Vermont Constitution "protects the people's right to be free from 'unreasonable government intrusions into legitimate expectations of privacy.'" State v. Ford, 2010 VT 39, ¶ 10, 188 Vt. 17. The exclusionary rule ordinarily requires

suppression of evidence obtained as a result of a search or entry that violates the Fourth Amendment or Article 11. State v. Oakes, 157 Vt. 171, 173 (1991).

As a preliminary matter, we note that the exclusionary rule normally applies only in criminal proceedings. In re Rosenberger, 2009 VT 18, ¶ 17, 185 Vt. 343 ("In simplistic terms, the exclusionary rule is a criminal-law doctrine precluding the admission of evidence directly obtained as the result of unconstitutional police conduct"). Courts have created some limited exceptions allowing the exclusionary rule to apply in non-criminal proceedings. State v. Lussier, 171 Vt. 19, 33 (2000) (holding that the exclusionary rule applies in civil suspension cases for driving under the influence); One 1958 Plymouth Sedan v. Com. of Pa., 380 U.S. 693, 700 (1965) (holding that the exclusionary rule may apply in a proceeding that is "quasi-criminal in character," where the object of such proceeding, "like a criminal proceeding, is to penalize for the commission of an offense against the law").

Here we do not need to determine conclusively whether the exclusionary rule applies to this proceeding because, as set out below, we conclude that based upon the facts presented by Respondent, there was no violation of the applicable constitutional prohibitions on unreasonable searches.

IV. Whether there was a Fourth Amendment or Article 11 "search"

The exclusionary rule applies only if there was a "search" or "seizure" for the purposes of the Fourth Amendment or Article 11. This depends first on whether there was a government intrusion, and second on whether the intrusion was in an area where there was a reasonable or legitimate expectation of privacy.

Regarding the first question, a government intrusion, or search, is one carried out by a government official, although "not all observational activities of governmental officials are searches for purposes of the Fourth Amendment." State v. Schofner, 174 Vt. 430, 432 (2002) (mem.) (citing Camara v. Municipal Court, 387 U.S. 523, 528 (1967)). A government official's search only triggers the Fourth Amendment and Article 11[1] if it is part of an "investigation into a

---

[1] The Court in Schofner limited its analysis to the Fourth Amendment, noting that the party challenging the search carries the burden of articulating whether, and why, Article 11 might provide greater protection. 174 Vt. at 434.

suspected violation of some law, regulation, policy or rule" and the actor is motivated by "a subjective motivation . . . to investigate [that] breach or wrongdoing." Id. at 434.

Here, according to sworn statements attached to ANR's August 3, 2016 reply, two firefighters and a police officer entered Respondent's property to investigate a suspicious fire. The statements suggest that the firefighters and police officer were motivated to investigate the fire because they suspected Respondent was burning certain items illegally. Based upon these representations, we conclude that the firefighters and police officer conducted a search pursuant to the parameters set out in Schofner: their search was motivated by an investigation of a suspected violation of a law or regulation. However, the statements also suggest that they entered the property to investigate, and manage, a large outdoor fire that presented some risk of spreading. If that is the case—that their entry onto the property was motivated by public safety concerns—then they did not conduct an investigatory "search" under the Fourth Amendment and Article 11. On the information contained in the sworn statements, we are not able to ascertain whether the firefighters ultimately decided to enter the property out of a concern for public safety, or because they wanted to investigate whether Respondent was violating the applicable law concerning the burning of illegal items.

Regarding the second question, the Vermont Supreme Court has "often noted the significance of the home as a repository of heightened privacy expectations, and have deemed those heightened expectations legitimate." State v. Bryant, 2008 VT 39, ¶ 12, 183 Vt. 355 (citations omitted). The home's curtilage—the area immediately surrounding the home "into which the privacies of life may extend"—merits the same degree of protection. Id. ¶ 13. Areas of property beyond the curtilage, known as "open fields," are only private insofar as the landowner takes "affirmative steps" to assert that privacy. Id. This is normally done with fences, gates, and no-trespassing signs, or other measures that would lead a reasonable person to understand that the landowner wishes the area to remain private. Id. A government intrusion into an area where such measures are taken is a search under the Fourth Amendment and Article 11. Id. However, privacy interests are forfeited in areas that are in plain view to the public. See State v. Bauder, 2007 VT 16, ¶ 30, 181 Vt. 392.

Here, it is not clear from the sworn statements presented where the fire was in relation to Respondent's home. According to Respondent's rebuttal letter, the fire was on "a closely mowed clearing atop a knoll on a 5+ acre property." Given the firefighters' descriptions of the 20–30 foot flames and column of thick black smoke, the fire was presumably outside of the home's curtilage in the "open fields." Nevertheless, because Respondent met the firefighters and police officer at the road and made it clear to them that he did not want them to enter the property without a warrant, we conclude that he had a legitimate expectation of privacy in these open fields. Although a portion of the fire was in plain view, the actual contents of the fire that led ANR to issue this AO were not visible from the road.

Because Respondent had a reasonable expectation of privacy in the area searched, and assuming that the firefighters and police officer may have been motivated to enter the property to investigate a possible violation of a law or regulation, we conclude that the officials may have entered Respondent's property in order to conduct an investigation of possible law breaking; we therefore regard their entry as an investigatory search for the purposes of the Fourth Amendment and Article 11.

V.     Whether the search was permissible

If a party has a reasonable expectation of privacy, then a government search is "permissible only pursuant to a few narrowly drawn and well-delineated exceptions": (1) warrant supported by probable cause; (2) valid consent; or (3) exigent circumstances. See State v. Ford, 2010 VT 39, ¶ 10, 188 Vt. 17 (quoting State v. Bauder, 2007 VT 16, ¶ 14, 181 Vt. 392). This is the "reasonableness" portion of the analysis. See Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006) (explaining that "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions") (citations omitted).

In this case, entry onto the property was reasonable due to exigent circumstances that required the firefighters to provide emergency assistance. The emergency assistance exception "provides a narrow carve-out from the warrant exception." State v. Ford, 2010 VT 39, ¶ 11, 188 Vt. 17. The exception applies when a government official: (1) has "reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property," and (2) there is "some reasonable basis, approximating probable cause, to

associate the emergency with the area or place to be searched." State v. Mountford, 171 Vt. 487, 490 (2000) (abrogated by Brigham City, 547 U.S. 398) (striking down any requirement to consider the subjective intent of the government official).

A number of courts in other jurisdictions have held that warrantless entry by fire department officials on private property to investigate or abate fire hazards falls under the emergency assistance exception. E.g. Michigan v. Tyler, 436 U.S. 499, 509 (1978) ("it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out a blaze," because "[a] burning building clearly presents an exigency of sufficient proportions to render a warrantless entry 'reasonable'"); United States v. Klump, 536 F.3d 113, 117–18 (2d Cir. 2008) (firefighters' entry into building based on fire chief's decision, based on experience and professional judgment, that doing so was necessary because of an odor of something burning).

In Vermont, an exception allowing firefighters to enter private property to manage potential forest fires is also codified by statute. 10 V.S.A. § 2644(a) (giving fire warden right to enter property to fight forest fires); 10 V.S.A. § 2641(d) (extending same right to deputy wardens); see also State v. Chandler, No. 2010-135, 2011 WL 4974829, at *2 (Jan. 27, 2011) (unpub. mem.) ("firefighters are authorized to enter property to investigate and extinguish fires that threaten public safety, irrespective of whether a landowner is required under the circumstances to obtain a permit to burn brush").

Based on their sworn statements, the firefighters here had mixed motives for entering Respondent's property. They both indicate that they suspected Respondent was burning illegal items, and wanted to investigate whether that was the case. At the same time, they were concerned about the fire spreading.

Although the firefighters' subjective motivation for entering the property may have been mixed, we do not consider their subjective motivation in determining whether the emergency exception applies. Ford, 2010 VT 39, ¶ 14. Rather, the Court must determine whether objectively reasonable firefighters in their position would have believed the fire presented a danger. Id. ¶ 13.

Sylvester stated that he called the police because "it appeared that the fire was increasing in size and becoming wind-blown." Although Respondent indicated the fire was in a large open

field, the firefighters were not able to confirm this from the road. According to Sylvester, Baldwin "made his way around the property line in an attempt to size-up the fire and check for possible spread." Respondent followed him to make sure he did not enter the property. Sylvester states that he began recording a video which shows heavy black smoke coming from the fire, and notes that "the smoke is fast moving being produced by heavy and very hot fire." Taken together, this indicates that the firefighters had some concern, based on their training and experience, that the fire presented a safety hazard. Because the fire presented such a hazard, it was reasonable for the firefighters to enter the property and investigate the fire.

## Conclusion

Because the firefighters and police officer had a reasonable and lawful basis to enter Respondent's property under the emergency exception to the Article 11 and Fourth Amendment warrant requirement, we conclude that Respondent's motion to suppress and dismiss is **Denied**.

Based upon our determination that Respondent's dismissal motion must be denied, we direct the Court staff to schedule this matter for a telephonic conference, so that the Court may discuss with the parties how this matter may be prepared for trial.

Electronically signed on September 27, 2016 at Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division