Hogan, Maureen B., J.
INTRODUCTION
The plaintiff, Stanley Sokol (“Sokol”), brought this action against the defendants, Randy Scott Best (“Best”), Lieutenant Robert Picariello (“Picariello”), and Officer Dean Peralta (“Peralta”), alleging claims for malicious prosecution, intentional infliction of emotional distress, and abuse of process against all defendants, and claims under G.L.c. 12, §11H for violation of his civil rights against defendants Peralta and Pic-ariello. Best has moved to dismiss the plaintiffs claims pursuant to G.L.c. 231, §59H (“the anti-SLAPP statute”) and Mass.R.Civ.P. 12(b)(6). Picariello and Peralta have moved to dismiss the plaintiffs claims pursuant to Mass.R.Civ.P. 12(b)(6). The plaintiff has opposed both motions. For the following reasons, Best’s special motion to dismiss pursuant to G.L.c. 231, §59 is ALLOWED, Best’s motion to dismiss pursuant to Rule 12(b)(6) is ALLOWED in part and DENIED in part, and Picaiiello’s and Peralta’s motion to dismiss pursuant to Rule 12(b)(6) is DENIED.
BACKGROUND
In his complaint, the plaintiff alleges the following facts to support his claims, which facts under Rule 12(b)(6) the court must accept as true. On April 8, 2006, at approximately 3:50 p.m., the plaintiff was returning to his car, which was parked on Chestnut Street in Marblehead, MA, after making a purchase at a hardware store. Before getting in his car, the plaintiff noticed two building permits posted in the first floor window of 12 Chestnut Street, the residence of defendant Best. The plaintiff stood on the sidewalk and attempted to read the permits. While the plaintiff was attempting to read the permits, Best exited his residence and asked the plaintiff what he was doing. The plaintiff pointed to the two building permits, stating that he was trying to read them. The plaintiff and Best had never met or had any communication with each other before that date. Neither Best, nor the plaintiff, said anything further, and the plaintiff returned to his car and began driving to his residence. "When the plaintiff had parked in his driveway and exited his car, Best stopped his truck in the street behind the plaintiffs car and glared at the plaintiff through the open passenger window of the truck. The plaintiff walked as quickly as he could into his residence and locked the door behind him. While walking toward the building, the plaintiff heard Best screaming at him in a loud voice, and although the plaintiff did not hear what Best said, he did hear Best calling his last name. The plaintiff remained inside his front hallway until he saw Best drive away.
Roughly 15 minutes later, at 4:15 p.m., Best went to the Marblehead Police Department to file a report that the plaintiff had committed a crime by trespassing on his property, looking through his window and harassing him. Best spoke to defendant Peralta, a police officer with the Marblehead police department, and defendant Picariello, a Lieutenant with the Marblehead Police Department. Best reported to Per-alta and Picariello that the plaintiff had trespassed on his property, looked into his window and harassed him and that the plaintiff had made numerous complaints about him to the Marblehead building inspector regarding the construction he was performing on his residence, and that such complaints and actions were part of a continuing pattern of activities engaged in by the plaintiff for over a year to harass him. The plaintiff alleges that such statements were untrue and Best knew them to be untrue.
Best requested that Picariello and Peralta charge the plaintiff with a crime or arrest him. Picariello assigned Peralta to investigate Best’s complaint. Per-alta first went to Best’s residence to examine the permits and the layout of the front yard. The permits were posted in the first floor window, less than three feet from the sidewalk, above a flower bed. Best told Peralta that the plaintiff had stood in his flower bed and looked into the window in which the permits were posted. Peralta and Best returned to the police station. Peralta and Picariello told Best that they did not have probable cause to arrest and charge the plaintiff with trespassing, criminal harassment, or window-peeping, but instructed him that he could apply for a criminal complaint himself in the district court.
At approximately 5:15 p.m., Picariello instructed Peralta to go to the plaintiffs residence to give him a “no tresspass warning.” Peralta went to the plaintiffs residence, but the plaintiff did not answer the door. Thereafter, the plaintiff called the police station to find out why an officer had come to his home. Peralta then went back to the plaintiffs residence and told the plaintiff that there were three witnesses who saw him on Best’s property. The plaintiff alleges that this statement was false and known by Peralta to be false. When he left the plaintiffs residence, Peralta said twice to the plaintiff, “see you in court.” The plaintiff alleges that Peralta’s visit to his residence and statements to him constituted threats that the police would falsely charge the plaintiff with a crime and arrest him. He *602 alleges that this visit and the statements made were malicious and intended to place the plaintiff in fear of being falsely arrested to make him cease his lawful petitioning activities of complaining and being publicly critical of the Marlborough police’s lax enforcement of traffic safety and parking violations, as well as public drinking and drug trafficking. The incident report that Peralta completed states that the status of the incident is “No Crime Involved.” The plaintiff further alleges that Peralta’s statement in the incident report that he communicated a “no-trespass order” to the plaintiff is false.
On April 10, 2006, Best went to the Lynn District Court and applied for a criminal complaint against the plaintiff for “constant trespass, window peeping and harassment.” On June 14, 2006, a clerk magistrate of the Lynn District court conducted a hearing regarding Best’s application for the issuance of a criminal complaint. Best testified at that hearing. At the hearing, Best testified:[2]
This has been an ongoing thing for over a year now. I have been renovating my house, he’s been trying to have that stopped. He’s written many letters to the building department, like, last spring, so it’s been over a year, ongoing. The building department has written him letters in return. I have a copy of one of them right here dated August 8,2005 stating that my permits — everything is in order, I am doing nothing illegal, basically to drop the subject, leave me alone.
The plaintiff alleges that Best knew that his application was materially false. The plaintiff further alleges that Best committed perjury at the hearing because his statement that the plaintiff wrote many letters to the building inspector was false, his statement that the building department had written the plaintiff more than one letter was false, and his statement that the plaintiff continuously returned to his property for over a year to trespass on it and look in the windows was false. The plaintiff alleges that Best’s motive in seeking the criminal complaint against him was to obtain retribution because the plaintiff had written a letter to the Marblehead building commissioner complaining that Best’s renovation of his property violated the zoning bylaw.
At the hearing, Best stated that no prior no-trespass notice had been given to the plaintiff. Although recognizing that Best was upset by the plaintiffs conduct, the clerk-magistrate denied the application for a criminal complaint.
Sokol filed the instant action on September 27, 2007, alleging a conspiracy between Best, Picariello and Peralta to bring false claims against him and asserting claims for malicious prosecution, abuse of process, intentional infliction of emotional distress, and violation of his civil rights. The plaintiff seeks money damages in the amount of $250,000 for emotional distress and legal fees of $2,200 for defense costs associated with Best’s application for criminal complaint in the district court.
DISCUSSION

I. Best’s Motion to Dismiss Pursuant to G.L.c. 231, §59H (Anti-SLAPP Statute)

The Strategic Litigation Against Public Participation (Anti-SLAPP) statute, G.L.c. 231, §59H, provides in pertinent part:
In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party’s exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss ... The court shall grant such special motion, unless the party against whom such special motion is made shows ... (1) that the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) that the moving party’s acts caused actual injuiy to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.
In order to obtain the protection of its petitioning activities under the Anti-SLAPP statute, the moving parly must make “a threshold showing through the pleadings and affidavits that the claims against it are ‘based on’ the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Wenger v. Aceto, 451 Mass. 1, 5 (2008); Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 168-69 (1998). Once the special movant so demonstrates, the burden shifts to the non-moving party to show by a preponderance of the evidence that the moving party lacked any reasonable factual support or any arguable basis in law for its petitioning activity, and that they suffered actual injuiy as a result. Wenger, 451 Mass. at 5; Duracraft, 427 Mass. at 167-68; Baker v. Parsons, 434 Mass. 543, 553-54 (2001); McLarnon v. Jokisch, 431 Mass. 348, 349 (2000). If the non-moving party fails to satisfy this burden, the court shall grant the special motion to dismiss.
Defendant Best, as the moving party, has sustained his initial burden of demonstrating that the plaintiffs claims against him for malicious prosecution, abuse of process and intentional infliction of emotional distress are based solely on his petitioning activity. Petitioning activity protected by the statute includes “any written or oral statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding [and]; any statement reasonably likely to encourage consideration of review of an issue by a legislative, executive, or judicial body, or any other governmental proceeding.” G.L.c. 231, §59H. Petitioning activity thus includes “reporting violations of law, *603 writing to government officials, attending public hearings . . . [and] testifying before government bodies.” Office One, Inc. v. Lopez, 437 Mass. 113, 121 n. 13 (2002), quoting Duracraft, 427 Mass. at 161-62. Reporting a crime or suspected crime to the police, seeking a criminal complaint, and participating in a clerk’s hearing regarding such application for a criminal complaint clearly constitute petitioning activity under the statute. See Wenger v. Aceto, 451 Mass. 1, 5-6 (2008).
A review of the plaintiffs complaint shows that his claims against Best are based solely on his report to the police, his application for a criminal complaint against the plaintiff, and his participation and testimony during the hearing before the clerk-magistrate on that application. Count I of the complaint states that “Defendants committed the tort of malicious prosecution by (a) initiating a criminal action against the Plaintiff.” Count IV states that the defendants “committed the tort of intentional infliction of emotional distress by (a) deliberately initiating a criminal action against the Plaintiff they knew was without probable cause and by which they intended to cause the Plaintiff severe emotional distress.” Count V states that the defendants “abused the legal process by (a) making numerous knowingly false statements of material fact (b) under oath (c) constituting the crime of perjury in an Application for Complaint and during testimony to a magistrate during a hearing on that complaint application.” A reading of the remaining allegations of the complaint shows that the plaintiff s claims are directed solely at Best’s “reporting violations of law” to the Marblehead police and seeking a criminal complaint. See id. Accordingly, Best has sustained his burden of making a threshold showing that the plaintiffs claims are based on “petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” See Duracraft Corp., 427 Mass. at 168-69; McLarnon, 431 Mass, at 349.[3]
The plaintiffs claims against Best must therefore be dismissed unless the plaintiff demonstrates by a preponderance of the evidence that Best’s application for a criminal complaint was “devoid of any reasonable factual support or any arguable basis in law” and that he suffered damages as a result G.L.c. 231, §59H; Wenger, 451 Mass. at 7; Baker, 434 Mass. at 551-52. To satisfy his burden of showing that Best’s application for a criminal complaint against him lacked any arguable basis in law, it is not enough for the plaintiff to show that the defendant’s application for a criminal complaint against him was based upon an error of law. Rather, the plaintiff must show that no reasonable person could conclude that there was a basis in law for such claims. Wenger, 451 Mass. at 7, citing Baker, 434 Mass. at 555 n.20; Donovan v. Gardner, 50 Mass.App.Ct. 595, 600 (2000) (the fact that legal challenges are resolved in plaintiffs’ favor does not mean that no colorable basis existed for defendants’ petitions). The plaintiff has failed to satisfy his burden of proving by a preponderance of the evidence that Best’s application for a criminal complaint against the plaintiff for the crimes of trespass, window peeping and criminal harassment lacked any reasonable factual support or any arguable basis in law.
Best sought a criminal complaint against the plaintiff for the crimes of trespass, window-peeping, and criminal harassment. Pursuant to G.L.c. 266, §120, a person commits the crime of trespass if he “without right enters or remains in or upon the dwelling house, buildings, boats or improved or enclosed land, wharf, or pier of another . . . after having been forbidden to do so by the person who has lawful control of said premises, whether directly or by notice posted thereon . . .” G.L.c. 266, §120. The crime of criminal harassment is defined in G.L.c. 265, §43A, which provides: “Whoever wilfully and maliciously engages in a pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress . . . shall be guilty of criminal harassment.” G.L.c. 265, §43A. “Window-peeping” is not specifically defined as a crime in the Massachusetts General Laws. The Massachusetts Appeals Court, however, has recognized that the crime of disorderly conduct may be applied to the activity of a “Peeping Tom,” who peers into the window of an individual’s residence and thereby alarms a person within that residence. See Commonwealth v. LePore, 40 Mass.App.Ct. 543, 549 (1996). Under the disorderly conduct statute, G.L.c. 272, §53, and cases construing the statute, a person is disorderly “if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (c) creates a hazardous or physically offensive condition by an act which serves no legitimate purpose of the actor.” Commonwealth v. Swan, 73 Mass.App.Ct. 258, 263 (2008). In explaining why “Peeping Tom” activities are among those that the disorderly conduct statute prohibits, the court in LePore stated: “Acting the ‘Peeping Tom’ offends and results in disorder by invading the privacy of persons precisely where they are most entitled to feel secure — where they live and rest.” LePore, 40 Mass.App.Ct. at 549. Further, as the plaintiff points out in his opposition, Marblehead Bylaw 119-1 also prohibits “Peeping Tom” activities: “No person, except an officer of the law in the performance of his duties, shall enter upon the premises of another with the intention of peeping into the windows of a house or spying upon in any manner any person or persons therein.”
The plaintiff argues that he has satisfied his burden of proving that Best’s application lacked factual support and any arguable basis in law with evidence of the clerk magistrate’s finding of no probable cause and dismissal of the application. The fact that no criminal complaint issued and that Best’s application was *604 therefore unsuccessful, however, does not prove that the application had no reasonable factual support or that no reasonable person could conclude that there was a basis in law for such claims. See Wenger, 451 Mass. at 7.
At the hearing before the clerk magistrate in the Lynn District Court, the transcript of which was submitted by the plaintiff in support of his opposition to Best’s motion to dismiss, Best testified:
This has been an ongoing thing for over a year now. I have been renovating my house, he’s been trying to have that stopped. He’s written many letters to the building department, like, last Spring, so it’s been over a year, ongoing. The building department has written him letters in return. I have a copy of one of them right here dated August 8, 2005 stating that my permits — everything is in order, I am doing nothing illegal, basically to drop the subject, leave me alone. So, when he keeps returning to my property and looking in my windows after he knows that everything is in order with the town and everything else, he does not have any reason to be there after they told him a year ago that everything is in order . .. And he should not be there looking in my windows ... I saw him standing in my flower garden in front of my house looking in my windows.
When asked at the hearing what the plaintiff did on April 8, 2006, Best testified, “Basic trespass because he shouldn’t be here because he’s been told that everything is in order and he continues to return to the properly. And he should not be there looking in my windows.” At the hearing, Best admitted that he had building permits posted in the windows into which the plaintiff looked, but added, “Yes, there are permits in that window. But he has no reason to look at permits for over the last year since he was told already that everything is in order and he’s looked at them many times before.”
Essentially, Best’s testimony at the clerk’s hearing was not only that the plaintiff stood on his property in his flower bed and looked into the window on April 8, 2006, but that he had repeatedly engaged in this behavior over the prior year by returning to the property and looking into the windows, after he had been told Best’s building permits were in order by the building commissioner. These facts to which Best testified provide reasonable factual support for Best’s application for a criminal complaint against the plaintiff for trespass, disorderly conduct, harassment and violation of the Marblehead “Peeping Tom” Bylaw.
Relying on his own affidavit, dated April 9, 2006, submitted in support of his opposition, the plaintiff also argues that Best’s application for a criminal complaint had no reasonable factual support because Best’s testimony that the plaintiff stood on his property, that he looked into the window, that the plaintiffs conduct was repetitive over the course of a year, and that the plaintiff sent “many” letters to the building commissioner was false, and Best presented no other evidence to support his testimony. In his affidavit, the plaintiff denies stepping onto Best’s property, stating that he was reading the building permits posted in Best’s window because he “was interested as a neighbor and a citizen in the ongoing construction and the change in use of that property as well as the effect of the new use on parking and traffic safety in the neighborhood.” In his opposition, plaintiff further denies that he looked into the windows of Best’s residence, and relying on photographs of the windows, argues that he could not have seen into the residence because of clutter in the windows. While the plaintiffs denial of the facts to which Best testified raises issues of fact and credibility, he has produced no other evidence to demonstrate that Best’s testimony was false. The plaintiffs denials are not sufficient to prove by a preponderance of the evidence that Best’s application for a criminal complaint lacked reasonable factual support.
The plaintiff has also failed to meet his burden of proving that Best’s application was devoid of any arguable basis in law. The plaintiff asserts that Best’s application for a complaint charging trespass was not based upon the law because neither Best, nor the police, had given the plaintiff previous notice to stay off Best’s property and there were no posted, “no trespass” notices on the property. The plaintiff is correct that an essential element of the crime of trespass is proof that the individual was forbidden to enter upon the property either directly or by posted notice. In determining whether a citizen’s petitioning activity in applying for a criminal complaint against another for entering onto his private property and looking into his home has an arguable basis in law, however, the inquiry is whether a reasonable person could conclude that given those facts, there was a basis in law for such a complaint. The plaintiff can not satisfy his burden by proving that Best was wrong as to the law and the required element of prior notice, but rather must prove that no reasonable person could conclude that there was a basis in law for a charge of trespass.[4] Here a reasonable citizen, unaware of the details of criminal law, could conclude that the plaintiff committed a trespass under the law by standing on Best’s flower bed and looking in his window. The plaintiff has failed to prove otherwise.
Moreover, even if Best’s application for a criminal complaint against the plaintiff for trespass lacked an arguable basis in law, his application for complaints against the plaintiff for criminal harassment and for disorderly conduct as a “Peeping Tom” had a colorable basis in the law. As to criminal harassment, Best testified that the plaintiff repeatedly returned to his property, trespassed, and looked into the window of his residence, which conduct arguably could constitute a pattern of activity or series of acts over a period of time directed at Best by the plaintiff, which caused Best alarm and distress. As to the crime of disorderly *605 conduct, Best’s testimony that the plaintiff looked into the window of his home, thereby violating his privacy, provides an arguable legal basis for a complaint of disorderly conduct under a “Peeping Tom” theory and also a violation of the Marblehead “Peeping Tom” ordinance. The plaintiff has thus failed to prove by a preponderance of the evidence that no reasonable person could conclude that Best’s application for a criminal complaint against the plaintiff had a basis in the law.
Accordingly, Best’s special motion to dismiss pursuant to G.L.c. 231, §59H, will be ALLOWED.
II. Motions to Dismiss Pursuant to Rule 12(b)(6)
To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to raise a right to relief above the speculative level, based upon the assumption that all the allegations in the complaint are true. Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-36 (2008). “While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his ‘entitle[ment] to relief requires more than labels and conclusions ... Factual allegations must be enough to raise a right to relief above the speculative level... [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .” Id. at 636, quoting Bell Atl. Corp. v. Twombly, 127 S.Ct 1955, 1964-65 (2007). “What is required at the pleading stage are ‘factual allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief...” Id., quoting Bell, 127 S.Ct. at 1966. With respect to pro se litigants, “leniency is appropriate” in deciding whether the complaint states a cause of action but “the pro se litigant is bound by the same rules of procedure as litigants represented by counsel.” Mmoe v. Commonwealth, 393 Mass. 617, 620 (1985).
A. Bests Rule 12(b)(6) Motion to Dismiss
Best also moves to dismiss the plaintiffs claims against him under Rule 12(b)(6), arguing that he is entitled to absolute immunity as to the plaintiffs claims against him for malicious prosecution, abuse of process, and intentional infliction of emotional distress because such claims are based upon statements he made in the course of a judicial proceeding, the clerk’s hearing before the clerk magistrate of the Lynn District Court. Best is correct that statements made in the course of a judicial proceeding which pertain to that proceeding are absolutely privileged and cannot support a claim for defamation, intentional infliction of emotional distress, or other cause of action in tort, which arise out of the same privileged statements. See Correllas v. Viveiros, 410 Mass. 314, 319, 324 (1991); Seelig v. Harvard Coop. Soc., 355 Mass. 532, 538 (1969); Fisher v. Lint, 69 Mass.App.Ct. 360, 366, 370 (2007); Doe v. Nutter, McClennen & Fish, 41 Mass.App.Ct. 137, 140 (1996); Sullivan v. Birmingham, 11 Mass.App.Ct. 359, 362 (1981). Although the plaintiff asserts that Best gave false testimony at the clerk’s hearing, however, the plaintiffs claims against Best for malicious prosecution and intentional infliction of emotional distress are not based solely upon the statements Best made during the clerk’s hearing, but also on his act of applying for a criminal complaint. The plaintiff alleges that Best’s act of applying for a criminal complaint constituted malicious prosecution and was intended to cause him emotional distress. To the extent that the claims are based upon Best’s act of instituting criminal proceedings, and not on the statements Best made during the clerk’s hearing, the doctrine of absolute immuniiy for statements made during a judicial proceeding does not require the dismissal of these claims. As stated in the complaint, however, the plaintiffs claim of abuse of process against Best is based upon Best’s “(a) making numerous knowingly false statements of material fact (b) under oath (c) constituting the crime of perjury in an Application for Complaint and during testimony to a Magistrate during a hearing on that complaint application.” Best is therefore entitled to absolute immunity as to the plaintiffs abuse of process claim because it is based only on Best’s statements made in the course of the clerk magistrate’s hearing and in the application for a criminal complaint. Accordingly, Best’s motion to dismiss under Rule 12(b)(6) will therefore be DENIED as to the claims for malicious prosecution and intentional infliction of emotional distress and ALLOWED as to the abuse of process claim.

B. Picariello's and Peralta’s Rule 12(b)(6) Motion to Dismiss

Pursuant to Rule 12(b)(6), defendants Picariello and Peralta have moved to dismiss the plaintiffs claims against them under the Massachusetts Civil Rights Act (“Civil Rights Act”), G.L.c. 12, §§12H, 12J, on two grounds: (1) that they are entitled to qualified immunity as to these claims and (2) that the complaint fails to state a claim under the Civil Rights Act because it does not allege “threats, intimidation and coercion.”
It is firmly settled that “government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known (emphasis supplied).” Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Shedlock v. Department of Correction, 442 Mass. 844, 859 (2004); Duarte v. Healy, 405 Mass. 43, 46-47 (1989). The right allegedly violated must be sufficiently clear that a reasonable official would understand that his or her actions constituted a violation of it. Anderson v. Creighton, 483 U.S. 635, 638-41 (1987). The purpose of this standard of qualified immunity is to protect governmental officials from undue interference, harassment, and inhibition in the performance of their duties by personal lawsuits for damages. Cleavinger v. Saxner, 474 U.S. 193, 201, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *606 Anderson v. Creighton, 483 U.S. at 638; Elder v. Holloway, 510 U.S. 510, 514 (1994).
The issue of whether a government official is entitled to qualified immunity for his conduct should, where possible, be decided prior to trial to assure that insubstantial claims do not proceed to trial. See Harlow, 457 U.S. at 815-19. The standard on a motion to dismiss, however, requires the court to accept all factual allegations in the complaint as true, even if they are doubtful in fact or the court questions the ability of the plaintiff to prove such allegations. See Iannacchino, 451 Mass. at 636. The complaint alleges that Picariello sent Peralta, and Peralta went to the plaintiffs residence, with the intent of threatening and intimidating the plaintiff to stop him from exercising his right of petition by his complaints about the police; that Peralta confronted the plaintiff with a crime the plaintiff knew he did not commit and which Peralta knew was not supported by probable cause; that Peralta lied about having three witnesses to the crime; and that Peralta twice threatened to see the plaintiff in court. Accepting such allegations as true and drawing all reasonable inferences from such factual allegations in the plaintiffs favor, although the court doubts that the plaintiff will ultimately be able to produce evidence to prove all such allegations, the court can not find at this stage that Picariello and Peralta have immunity for such conduct. The issue of qualified immunity for Picariello and Peralta can be properly addressed by a motion for summary judgment. See Harlow, 457 U.S. at 818-19.
Furthermore, to state a civil rights claim under the MCRA, a plaintiff must demonstrate that a person or persons interfered with his state or federal rights by threats, intimidation, or coercion. See G.L.c. 12, §§11H, 111; Haufler v. Zotos, 446 Mass. 489, 505 (2006) (defining threat as “intentional exertion of pressure to make another fearful or apprehensive of injury or harm[;]" intimidation as “putting in fear for the purpose of compelling or deterring conduct!;]” and coercion as “application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done” (citations omitted)). Again accepting the allegations of the complaint as true, as it must, the court finds that the complaint does allege “threats, intimidation and coercion” sufficient to raise a right to relief above the speculative level for violation of the Civil Rights Act. Accordingly, Piciariello’s and Peralta’s motion to dismiss the claims against them under the Civil Rights Act will be DENIED.
Pursuant to Rule 12(b)(6), defendants Picariello and Peralta have also moved to dismiss the claims against them for intentional infliction of emotional distress, arguing that the allegations of the complaint do not sufficiently allege conduct that is extreme and outrageous. A claim for intentional infliction of emotional distress requires, “(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of the conduct,... (2) that the conduct was extreme and outrageous beyond all possible bounds of decency and was utterly intolerable in a civilized community, . . . (3) that the actions of the defendant were the cause of the plaintiffs distress, . . . and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure.” Conway v. Smerling, 37 Mass.App.Ct. 1, 8 (1994). Accepting the allegations of the complaint as true — that the defendants threatened to take the plaintiff to court for a crime they knew he did not commit for the purpose of silencing his complaints about their police department — the complaint sufficiently alleges conduct that is extreme and outrageous beyond all possible bounds of decency and utterly intolerable in a civilized community, and plausibly suggests an entitlement to relief. Accordingly, Picariello’s and Peralta’s motion to dismiss the claims against them for intentional infliction of emotional distress will be DENIED.

ORDER

For the foregoing reasons, it is hereby ORDERED that Best’s special motion to dismiss pursuant to G.L.c. 231, §59H is ALLOWED; Best’s motion to dismiss pursuant to Rule 12(b)(6) is ALLOWED as to the abuse of process claim and DENIED as to the claims for malicious prosecution and intentional infliction of emotional distress; and Picariello and Peralta’s motion to dismiss pursuant to Rule 12(b)(6) is DENIED.

The plaintiff submitted the transcript of the hearing in support of his opposition to Best’s motion to dismiss.

The plaintiff argues that his claims against Best are not based solely on petitioning activity, but on Best’s civil conspiracy with the other defendants. The plaintiffs allegations of a conspiracy, however, are conclusoiy and speculative and are not supported by the facts alleged in his complaint. Such allegations do not undermine Best’s demonstration that the plaintiffs claims have no substantial basis other than or in addition to his petitioning activities.

Where a criminal complaint for a misdemeanor is sought by a citizen in an attempt to lawfully redress a perceived wrong, the clerk’s hearing required by G.L.c. 218, §35A exists to assure that criminal complaints do not issue without support in the law. “The implicit purpose of the §35A hearings is to enable the court clerk to screen a variety of minor criminal or potentially criminal matters out of the criminal justice system through a combination of counseling, discussion, or threat of prosecution .. .” Commonwealth v. Cote, 15 Mass.App.Ct. 229, 235 (1983), quoting Snyder, Crime and Community Mediation—The Boston Experience: A Preliminary Report on the Dorchester Urban Court Program, 1978 Wis.L.Rev. 737, 746. In such circumstances, citizens should not be required to know all of the elements and the details of the criminal law before exercising their right of petition, provided a reasonable person could conclude that there was a basis in the law for the application.